DOROTHY CHRISTENSEN, Appellee, v. HAUFF BROTHERS et al., Appellants.

MASTER AND SERVANT: Workmen's Compensation Act—Death Not "Arising Out of" Employment. A death may not be said to "*arise out of*" an employment when the basic facts were that the employee, being the manager for the master of a hardware and implement store at a place remote from the place in the county where the master had his headquarters, was called by the master to headquarters for consultation, and after the consultation had been finished, and after the employee had received from the master his railroad ticket for the return passage, the employee, in starting on the return journey, was killed while attempting to board a freight train at a point other than the caboose.

*Appeal from Plymouth District Court.*—WILLIAM HUTCHINSON, Judge.

JUNE 23, 1922.

PROCEEDINGS brought under the provisions of the Workmen's Compensation Act, to recover compensation on account of the death of Henry Christensen. The arbitration committee called to consider the claim rejected it. The industrial commissioner sustained the committee, and plaintiff thereupon appealed to the district court, which reversed the commissioner's finding. Defendants appeal. The decision of the district court is reversed, and the commissioner's finding sustained.—*Reversed.*

*Ray J. Mills* and *Sampson & Dillon,* for appellants.

*C. R. Metcalfe,* for appellee.

ARTHUR, J.—The application of claimant for arbitration alleges that Henry M. Christensen received an injury, which resulted in death, arising out of and in the course of his employment, on the 6th day of June, 1916, and prayed an award granting relief under the Workmen's Compensation Act. Henry M. Christensen was a single man. The claimant alleged that she was the mother of the injured employee, and that she and her two daughters were dependent upon him for support.

Defendants admitted that Henry M. Christensen was killed while attempting to jump aboard a moving freight train, but specifically denied that Henry M. Christensen received the injury arising out of and in the course of his employment, and further specifically denied that the claimant and her daughters were dependent upon the earnings of Henry M. Christensen, deceased.

For some time prior to and on June 7, 1916, Henry M. Christensen was in the employ of appellants Hauff Brothers, acting in the capacity of general manager of their implement store at Struble, Iowa. On the 7th day of June, 1916, Henry M. Christensen lost his life, in an endeavor to board a flat car on a moving freight train.

The evidence in the case was given by witnesses produced by claimant. Defendants offered no testimony. The facts in the case are substantially as follows:

The firm of Hauff Brothers was engaged in the farm machinery and hardware business at the towns of Hinton, Merrill,

Craig, and Struble, with headquarters at Hinton, in Plymouth County, Iowa. At the time of the accident, and for some time previous, Henry M. Christensen had been in the employ of Hauff Brothers, latterly as manager of their business at the town of Struble, some 20 miles distant from Hinton. In response to a call from the home office, Christensen came from Struble to Hinton on the evening of June 6th, the day before the accident in question, and stayed over night at Hinton at the home of D. H. Hauff, a member of the firm of Hauff Brothers. It was understood that Christensen was to go back to Struble the next morning. The morning passenger train out of Hinton to Struble left Hinton around 7 o'clock in the morning; and, as testified to by D. H. Hauff, "Christensen did not get that train—that gets in early, around 7 o'clock; and I then said, 'You might just as well take the freight.'"

Hauff bought Christensen a ticket to Struble, and gave it to Christensen to go on the freight train, which left Hinton at 8:35 A. M. This freight train arrived at Hinton from the south at 7:35, leaving about an hour later. After discharging local freight, it was backed down on the siding to await the passing of a passenger train from the north, after which it was backed onto the main line, to come up from the south, without stopping again at the station. In the meantime, according to the testimony of D. H. Hauff, Christensen had been engaged in setting up a mower and hay rake. Christensen had finished setting up the machinery, and was standing in the door of Hauff Brothers' store, some 150 or 200 feet diagonally across the street from the railroad station, talking to D. H. Hauff, when the freight train started, and Christensen went over to the depot to get on the freight train, to go to Struble. The train was made up of about 28 freight cars, with a caboose on the rear end, which was for the accommodation of passengers. The caboose was the only car in the train meant for the accommodation of passengers. At the rear end of the caboose, back of the wheels, there were steps for entering the caboose, and seats inside for the accommodation of passengers. When Christensen reached the depot platform, by the side of which the freight train was moving at 8 to 10 miles an hour, instead of boarding the ca-

boose, he attempted to swing himself to a sitting position on a
flat car, and lost his balance, and fell under the wheels, and
was killed. The caboose was at the rear end of the train, three
or four car lengths back of the flat car which Christensen tried
to mount. Christensen, instead of waiting for the caboose, seems
to have been running along with the train, when he attempted
to get onto the flat car.

Fisher, the station agent, who witnessed the tragedy,
testified:

"Mr. Christensen was running slower than the cars were
moving,—the cars were passing him. He was running all the
time, and I saw him place his hands on the flat car. He tried
to jump on at the same time that he tried to put his hands on
the flat car. He did not have anything to hold onto. He tried
to throw himself up in some way on the flat car by placing his
hands on the flat car and jumping. He did not make the flat
car, and the accident happened. The flat car on which Mr.
Christensen attempted to jump was an ordinary flat car, as to
height from the ground, and was without any hand grabs or
grab irons. The caboose had hand grabs that the passengers
could take hold of in boarding the train. These hand grabs were
for the use of the passengers. The caboose had steps on the side,
regular steps that extended downward, so that the passengers
could mount the caboose readily, such as are ordinarily used for
the accommodation of passengers on freight trains."

Witness P. W. Snowden testified that the train was run-
ning four or five miles an hour, and that there were four or five
cars between the flat car and the caboose. This witness also tes-
tified that some man, assumed to be the conductor, got on the
engine, and he heard this man tell Christensen to "Go down
and get on." Snowden said:

"This man pointed toward the caboose, when he said to
Christensen, 'Go down there and get on.' "

Snowden also described Christensen's attempt to board the
flat car, substantially the same as did the station agent, Fisher.

That the accidental death of Christensen arose in the course
of his employment with appellants Hauff Brothers, there can
be no question. He was in the employ of Hauff Brothers at the

time, and had been for about a year. It was in the course of his employment to journey from Struble to Hinton at the request of his employers, and to return to Struble the next day. In the establishment of a compensation claim, however, it is necessary that the facts and circumstances involved meet the further requirement of *arising out of the employment*. Not only must the injury occur during the course of the employment, but it must also be clearly established that it arose *out of* the employment. It is insufficient to prove one or the other of these propositions; the proof of one is not proof of the other. *Griffith v. Cole Bros.*, 183 Iowa 415; *Pace v. Appanoose County*, 184 Iowa 498; *McNicol's Case*, 215 Mass. 497 (102 N. E. 697); *Bryant v. Fissell*, 84 N. J. Law 72 (86 Atl. 458). A clear judicial analysis of this subject is found in the *McNicol* case, supra, in which the court said:

"An injury 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

In *Bryant v. Fissell*, supra, the court said:

"For an accident to arise out of and in the course of the employment, it must result from a risk reasonably incidental

to the employment. * * * We conclude, therefore, that an accident arises 'in the course of the employment' if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.''

The correct reasoning is: There must be a causal connection between the employment and the injury, and the injury must be the rational consequence of a hazard connected with the employment. In *Madden's Case*, 222 Mass. 487, the court said:

"The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment, and not by some other agency, or there can be no recovery.''

It has been held in many cases that a workman required to travel by train is outside of the scope of his employment in attempting to board a train while in motion, although it was necessary for him to take that particular train in order to keep an appointment made for him by his employer. Supporting such theory, see *Northwestern Pac. R. Co. v. Industrial Acc. Com.*, 174 Cal. 297 (163 Pac. 1000); *Jibb v. Chadwick & Co.*, (1915) 8 Butterworth W. C. C. 152.

In *Griffith v. Cole Bros.*, supra, we said:

"It must appear by a preponderance that there is some causative connection between the injury and something peculiar to the employment (*Jones v. United States Mut. Acc. Assn.*, 92 Iowa 652); that it resulted from some risk reasonably incident to the employment, because 'out of' involves the idea that the injury is in some sense due to the employment (*Fitzgerald v. W. G. Clarke & Son*, 2 K. B. [1908] 796); a causative danger peculiar to the work, and not 'common to the neighborhood,' an injury fairly traceable to the employment as a contributing cause,—to some hazard other than one to which the workman would have been equally exposed though in a different employment (*McNicol's Case*, 215 Mass. 497 [102 N. E. 697]); a hazard peculiar to the business which is 'the immediate cause' of the injury (*Rodger v. Paisley School Board*, 1 Scots Law Times [1912] 271, and see *Robson, Eckford & Co. v. Blakey*, 5 B. W.

C. C. 536); an injury due to something more than the normal risk to which all are subject, which, at the least, means that the employment necessarily accentuates the natural hazard attendant upon work done in the course of the employment (*State v. District Court*, 129 Minn. 502 [153 N. W. 119]).''

That the workman was negligent, even grossly negligent, and acted in flagrant disregard of his bodily safety, is readily apparent. But freedom from negligence is not required to be shown in behalf of the workman, and negligence of a workman is not a defense under the act. To defeat recovery, it must ''appear that such negligence was willful, and with intent to cause injury; or the result of intoxication on the part of the injured party.'' No question of willful misconduct arises in the case. The sole question in the case is whether the accident and consequent injury arose out of and in the course of the workman's employment. However, it is most material and pertinent to inquire: Is there anything peculiar to the hardware and implement business suggesting the rash venture which sacrificed Christensen's life, and was there causal connection between the conditions under which this work was required to be performed and the resulting injury? Upon what reasonable basis may it be assumed that this workman, as a requirement of his occupation, was in any degree justified in the attempt to board the train as he did, instead of going into the caboose? It may be conceded that, after he had missed the passenger train, Christensen expected to go to Struble on this freight train. Counsel for claimant insists that Christensen was detained until it became necessary to make a dash for the train, after it was under headway. The record does not bear out such a conclusion. Counsel's assumption that it became necessary for Christensen, after having been forced to take the train on the run, according to his unsupported assertion, to make the attempt he did to get aboard the flat car, because the speed of the train suggested the impossibility of getting on the caboose, is not justified. If Christensen had moved on toward the caboose, instead of running along with the train by the side of the flat car, before attempting to jump onto the flat car,—for what distance the record does not disclose,—he would have reached the caboose at

approximately the same time, and when the train was going approximately at the same speed it was going when he attempted to mount the flat car. The caboose afforded convenience and safety to the passengers. There were convenient steps and side rails for the grip of the hands in boarding the caboose. We cannot say with certainty that, if Christensen had attempted to board the caboose, he would have accomplished it in safety. To make such an assertion would be purely prophecy. He was a young man of physical activity beyond the ordinary. If he had attempted to enter the caboose, he would have found steps for entrance and rails to take hold of. If, perchance, he failed to gain the steps or to get hold of the rails, he might have fallen, and sustained in some measure personal injury. But it can scarcely be presumed that such injury would be very serious, because the entrance to the caboose was behind the wheels. We do not think that Christensen, in his attempt to throw himself upon the flat car, without any standards or projections to take hold of, was doing a thing occasioned by the nature of his employment; and therefore such act and consequent injury could not be said to arise out of his employment. There was no justification for Christensen's attempt to board the freight train by mounting the flat car in a most unusual manner, and for reasons wholly unjustifiable. In attempting to jump onto the flat car, he was not at a place where he might reasonably be, doing what a man so employed might reasonably do. We cannot conceive that Christensen's employment contemplated or comprehended any such unusual and rash act. If Henry Christensen, in attempting to board the flat car, was performing an act reasonably required by his employment, his injury and consequent death might be said to have causal connection with his employment, and therefore to arise out of his employment. In other words, if, upon consideration of all the circumstances, there existed causal connection between the conditions under which Christensen's work was required to be performed and the resulting injury, it could then be said that he was, at the instant of the injury, within the scope of his employment. If the conclusion may be logically reached that the workman's injury followed as a natural incident of his work, and was rea-

sonably contemplated in his employment, then it may be said to have arisen out of the employment. But we think such conclusion not reasonably possible. We think it could not have been contemplated in this relationship of employer and workman, disclosed by the facts and circumstances in this case, that Christensen would do the hazardous and rash act which he did. There was nothing in his engagement requiring such an act. We think it cannot with any reason be said that the injury and consequent death of the workman arose out of his employment. For illustration: Suppose a shipper of stock was transporting some cars of stock from Hinton to the Chicago stockyards, and instead of going himself, he sent his employee with the stock, to look after unloading them on the way and water and feed them as became necessary; and he furnished the employee with transportation to ride in the caboose carried at the rear of the train for the accommodation of stockmen. And suppose that, with the curiosity of youth, the young man, instead of contenting himself to ride in the caboose, climbed on top of a box car to ride, and lost his balance and fell off and was injured. Under such state of facts, the employee, of course, could not recover against the carrier, although a brakeman falling from the top of the box car might recover, if it was within the scope of his employment to leave the caboose and go onto the cars to manipulate brakes. This employee could not recover for his injuries from the shipper, because there was no occasion arising out of his employment for his being on top of the box car, and his injury would have no causal connection with his employment.

Appellee relies with much confidence, to sustain his theory, upon *Clem v. Chalmers Motor Co.*, 178 Mich. 340 (144 N. W. 848). This case has a feature similar to the case we have before us. The employer was erecting a building which was 160 feet long, 150 feet wide, and 19 to 20 feet high. The workmen were on top of the building, laying a roof. It was a flat roof. Between 9 and 10 o'clock, the men were instructed by a subforeman to come down from the top of the building for a coffee lunch. The men went to and fro from the roof in the course of work by means of a ladder built for that purpose, which was attached firmly to the side of the building, extending from

the ground to the roof. When the call was made to come for the coffee, all of the men descended by the ladder but Clem and two fellow workmen named Sekos and Glaser. Instead of coming down the ladder, Mr. Clem picked up one end of a loose rope, about 20 feet long, and gave one end to Sekos, directing him to hold it in his hand. The rope extended over the edge of the roof about seven feet. Taking the rope in his hand, Clem passed over the edge of the roof, descending on the rope, and fell, receiving injuries which resulted in his death. The Michigan court held that the deceased workman received ''personal injury arising out of and in the course of his employment.'' However, the court seems to have decided the case on the particular question presented, which was whether the act of the workman in descending on the rope, instead of the ladder, was ''such intentional and willful misconduct as to defeat compensation under the act;'' and it held that it was not. Whether, in descending by the rope instead of by way of the ladder, the workman was dealing with an exposure or hazard occasioned by the nature of his employment, and whether there was any causal connection between the conditions under which his work was required to be performed and the resulting injury, do not seem to have been discussed by counsel, and are not mentioned in the opinion.

Counsel for applicant cites *Decatur R. & Lt. Co. v. Industrial Board,* 276 Ill. 472 (114 N. E. 915), which he insists is exactly in point. We think the case readily distinguishable from the instant case. The workman, Mulverhill, was engaged in unloading coal brought to the plant in cars. He had finished unloading all the coal that had been brought to the plant, and went to the railroad yards to see about getting more coal. He saw a train of cars loaded with coal, with a switchman standing on the front of the engine. Mulverhill stepped on the footboard on the rear of the engine, and soon after fell off, and was run over and injured. It was shown in evidence that, under direction of the chief engineer, Mulverhill was in the habit of seeing the switching crew and giving them directions about placing cars of coal at the plant, and that on other occasions he had gone down to the yard to get them to bring up coal. The court

said that it might be inferred from the evidence that Mulverhill was directed to go down and get the switchmen to bring coal, and held that such acts were in the course of his employment. In this case, it was argued that getting on the moving train was clearly an act entirely outside of and unconnected with Mulverhill's employment. But the court found that Mulverhill had gone after the coal in the course of his duty to request the switching crew to bring the cars of coal to the plant; that it was Mulverhill's business to see that the switchmen were on the train, which was moving toward another part of the yard; and that it may have seemed to Mulverhill that the quickest way to get in communication with the switchmen was to board the train. The court held, therefore, that his act in getting on the coal train arose out of and in the course of his employment.

*White v. Industrial Com. of Wisconsin,* 167 Wis. 483 (167 N. W. 816), cited by applicant, is a case somewhat similar to the instant case, in that the employee fell to his death while attempting to board a moving car. White, applicant, under contract with the United States government, was engaged in transferring mail from the station of the Chicago, Milwaukee & St. Paul Railway Company to the station of the Chicago & Northwestern Railway Company, in the city of Madison, Wisconsin. One Andrew Behrend was in the employ of White. Shortly before the arrival of a Chicago, Milwaukee & St. Paul train, Behrend was on the platform of the Northwestern station, for the purpose of receiving the mail and making the transfer. About the time the train was coming to a stop, he climbed upon the side of the mail coach, took hold of the bars on each side of the mail door, slipped and fell under the train, and received injuries from the effects of which he died. Under his contract, White was required to meet the incoming train at the station, receive the mail, and convey it to the other station. It appeared from the evidence that usually, when the train came to a stop opposite the Northwestern station or the intersection of the tracks, the employee Behrend would be standing there, and the mail dispatched to him at that point; but that sometimes when the train did not stop, or when the mail clerk was busy and did not have time to dispatch the mail at that point, Behrend would

board the train and ride across the street to the Milwaukee station, where the mail would be dispatched to him. At the time in question, the side door of the mail car was closed when the train approached, and Behrend climbed up on the car, for the purpose of attracting the attention of the mail clerk and receiving the mail. It was the custom for employees to board the train under such circumstances. It is said in the opinion:

"The evidence establishes without controversy that it was decedent's duty to transfer the mail at the place of accident; that the mail would not be given to the decedent to transfer at this point, unless he was at the door of the mail car when it was opened to discharge the pouch; that the train stopped at this place for a railroad crossing, at which it is common knowledge that trains stop only long enough to come to the dead stop required by law; that, if decedent was not at the door of the mail car when it was opened, the pouch would be carried on to the depot; that the train to which the pouch was to be transferred was then standing at its depot; and that the mail-car door was not open to discharge the pouch at the point where deceased first met the mail car. It is apparent that decedent had but a limited time in which to perform his duty of transferring this mail. This state of facts does support the finding of the commission that the decedent was performing services growing out of and incidental to his employment, especially when it is shown that others who had performed the same duty during the preceding fourteen years had ridden on the train while it was in motion, in order to expedite the transfer of this mail. It was decedent's duty to get the mail and transfer it to the waiting train that was to carry it south. All that he did tended to expedite the performance of that duty."

We think the holding, when the case is carefully analyzed, not antagonistic to the decision of the industrial commissioner in the instant case.

Other cases are cited by counsel to sustain applicant's position, which cases we have carefully examined. While these cases have features similar to the instant case, we think they are quite readily distinguishable, and not authority for holding in

the instant case that there was causal connection between Christensen's duties and the injury which resulted in his death.

We hold that Henry M. Christensen, the workman, was without the scope of his employment; that the injury and death did not arise out of his employment; and that applicant is not entitled to recover compensation payments from defendants.

The judgment and decree of the district court are reversed, and the decision of the industrial commissioner is sustained.— *Reversed.*

Stevens, C. J., Evans and Faville, JJ., concur.