MABEL J. WALKER, Appellee, v. SPEEDER MACHINERY CORPORATION et al., Appellants.

No. 40995.

FEBRUARY 9, 1932.

Havner, Flick, Huebner & Powers and Calhoun & Calhoun, for appellee.

Carl F. Jordan, for appellants.

GRIMM, J.—On May 17, 1930, there was filed with the Industrial Commissioner an application for arbitration, in which said application the Speeder Machinery Corporation is designated as "employer" and the Continental Casualty Company is designated as "insurance carrier." It is claimed, in substance, that Charles E. Walker was an employee of the Speeder Machinery Corporation, which Company is engaged in manufacturing machinery and has its principal office and place of business in Cedar Rapids, Iowa, and that Walker was employed as a demonstrator and expert repair man, and that he was subject to call to go to any point to demonstrate or repair a machine. On the particular trip in controversy, he was sent first to points in Ohio, and from there was ordered, by wire, to report at Pittsburgh, Pa. It is claimed that he engaged a room in a hotel at Pittsburgh, and from there went out to secure a meal; that,

while crossing the street, he was injured by an automobile, from which injury, in the course of three or four days, he died, without having regained consciousness. The claimant is the surviving spouse and the mother of decedent's four minor children.

It is alleged that the injury was incurred while the decedent was in the line of duty and while acting within the scope of his employment.

On May 23, 1930, there was an answer filed to the petition for arbitration, in which said answer the Speeder Machinery Corporation is designated as "employer," the Continental Casualty Company as "insurance carrier," and as "Defendants." The body of the answer is as follows:

"The respondent above named for answer to plaintiff's petition respectfully states: that they deny each and every allegation set forth in claimant's application, and particularly denies that Charles Ernest Walker came to his death by reason of any cause or thing whatsoever growing out of or connected with his employment."

There was first an arbitration decision and petition for a review by the Industrial Commissioner, finding by the Commissioner, and a trial to the District Court of Linn County, Iowa. In each instance, there was a finding for the plaintiff. The trial court granted a decree against both defendants. Many claims are made on behalf of the defendants, some of which only, we feel, need consideration.

I. The appellant claims that the court committed error in rendering judgment against the Continental Casualty Company, hereinafter, for the sake of brevity, called "the insurer." It will be noted that the insurer is one of the defendants named in the application for arbitration. Likewise, in the answer to the petition for arbitration, while the attorney appearing designates himself attorney for respondent, nevertheless he answers "that they (meaning both defendants) deny each and every allegation," etc. There also appears in the record a stipulation, as follows:

"It was further stipulated that on February 23rd, 1930, and subsequent thereto, the Speeder Machinery Corporation of Cedar Rapids, Iowa, was operating under the Workmen's Compensa-

tion Act, and the Continental Casualty Company was carrying the workmen's insurance for such corporation. * * * It was further stipulated that the Defendants had due, timely, and legal knowledge of the fact that on or about the 23rd day of February, 1930, Charles Ernest Walker sustained a personal injury in an automobile accident, which resulted in his death, and that claim was being made by this claimant against the defendants on account of said fatal injury.''

At various times during the trial, the attorney for the respondent filed objections, in form as follows: ''The defendants object to the introduction of * * *.'' There also appears from the abstract the following: ''After the arbitration decision, the defendants duly filed their petition for review by the Iowa Industrial Commissioner.''

The petition for review, naming the Speeder Machinery Corporation as employer and the Continental Casualty Company as insurance carrier, as defendants, contained the following:

''Comes now the defendants and each of them and petition for a review as by law provided, and they and each of them ask the commissioner to fix a time for hearing of this case in review and notify the parties.''

The notice of appeal to the District Court of Linn County, Iowa, being entitled as above, contains the following:

''Comes now the defendants and each of them, and as provided by law, appeal to the District Court of Linn County, Iowa, from the decision and findings of the Iowa Industrial Commissioner in the above-entitled case upon the ground:

''1. That the Commissioner acted without or in excess of his powers.

''2. The facts found by the Commissioner do not support the order or decree.

''3. There is not sufficient competent evidence in the record to warrant the making of the order or decision.

''And the Commissioner is asked to forthwith notify the parties in interest and to certify the record at the office of the Clerk of the District Court of Linn County, Iowa, at Cedar Rapids, Iowa, together with all documents in the case, including

1138

depositions and a transcript of certificate of the affidavits, together with this notice of appeal.''

Nowhere was the question raised that the insurance carrier was not a proper party defendant. The case was tried throughout in behalf of both of the parties defendant without such objection. Under such a record, the question of jurisdiction over the insurance carrier cannot be raised in this court for the first time. We make no pronouncement as to whether the insurance carrier is a proper or necessary party in such a proceeding.

II. The appellant contends that a certain letter, claimant's Exhibit ''F'', alleged to have been written by the decedent to his wife, which letter was introduced in evidence, is incompetent. The letter is undated, and the record does not disclose when it was written or sent. Upon the record in this particular case, this exhibit was not admissible, and it should not have been given consideration by the Commissioner or the court. There was, however, competent evidence in the record upon the subject covered by the letter, and its introduction, though erroneous, was not reversible. See Renner v. Model Laundry Cleaning & Dyeing Company, 191 Iowa 1288; Hinrichs v. Davenport Locomotive Works, 203 Iowa 1395; Swim v. Central Iowa Fuel Co., 204 Iowa 546.

III. The appellant strenuously contends that Exhibit ''G'', which purports to be a certified copy of a death certificate certified by the State Registrar concerning the death of Walker, should not have been admitted. It is material, if at all, only because it contains the following:

''The cause of death was as follows: Fracture of skull and pulmonary edema following being struck by an automobile at Baum Blvd. and Beatty St.''

We need not determine whether this instrument was properly admitted or not, for the reason that there is in the record a stipulation, as follows:

''It is stipulated by and between the parties to the above-entitled proceeding that shortly after nine o'clock P. M. February 23, 1930, Charles E. Walker was struck and fatally injured by an automobile as he was crossing Baum Blvd. at or near the

intersection of Beatty Street and Baum Blvd. in the city of Pittsburgh, Pennsylvania."

It will thus be seen that all of the material portion of the certified copy of the death certificate was put into the record by stipulation of the parties, and whether the instrument was properly introduced or not is a moot question which we will not determine.

We do not find it necessary to set out the proper course of procedure introducing documents of this character. We are only to be understood as holding hereby that this particular offer, Exhibit "G", whether properly introduced or not, worked no prejudice, under the record as here presented.

█ IV. It is next claimed by the appellant that much of the testimony given by the appellee should have been stricken because hearsay. This court has said in Swim v. Central Iowa Fuel Co., 204 Iowa 546, l. c. 549, which was an action to recover compensation, concerning the hearsay ruling the following:

"We cannot agree to the proposition that the rule against the admission of hearsay evidence as proof of a fact is a mere technical rule of evidence. The rule against hearsay evidence is more than a mere artificial technicality of law. It is founded upon the experience, common knowledge, and conduct of mankind. See Englebretson v. Industrial Acc. Com., 170 Cal. 793 (151 Pac. 421); Olson-Hall v. Industrial Com., 71 Colo. 228 (205 Pac. 527)."

The record does not show that any objections were made to the questions, nor were there motions made to strike each of the answers as and when they were given; but the motion comes at the conclusion of the testimony. Moreover, it is a broad, sweeping motion, very difficult, if not impossible, of application, and in the form in which it was put, was properly overruled.

V. The appellant very extensively argues objections to the introduction of certain evidence, both when introduced by oral evidence and in the form of depositions. We have very carefully examined this part of appellant's case, and find that the substance of the evidence to which objection is thus made is covered by the stipulation hereinbefore referred to, in which it is agreed that the deceased came to his death by reason of an

1140

automobile accident, received at Pittsburgh, Pa., about nine o'clock on the evening of February 23, 1930, at or near the vicinity of Baum Blvd. and Beatty St.

■ VI. It is next contended that the judgment and decree of the District Court is not in proper form. The said judgment and decree provides as follows:

"Therefore, it is Ordered, Adjudged and Decreed that the claimant-appellee, Mabel J. Walker, do have and recover a judgment against the defendant-appellants, Speeder Machinery Corporation and Continental Casualty Company, in the sum of Eleven Hundred Fifty Seven ($1157.00) Dollars, with interest thereon at six per cent (6%) per annum from the date of this decree until paid, and for the court costs incurred in the hearings before the arbitration committee, the Iowa Industrial Commissioner and this court, which costs are taxed in the sum of $............; that said judgment includes the workmen's compensation at Fifteen ($15.00) Dollars per week for the fifty-one weeks' compensation that matured prior to the date of this decree, Twenty-two ($22.00) Dollars interest on said matured and unpaid payments of compensation, One Hundred Fifty ($150.00) Dollars incurred for the burial of said decedent, and Two Hundred ($200.00) Dollars medical, surgical and hospital expense incurred on account of said fatal injury. In addition to the foregoing judgment, it is further ordered, adjudged and decreed that beginning on the 22nd day of February, 1931, and continuing for two hundred forty-nine weeks, the defendants-appellants, Speeder Machinery Corporation and Continental Casualty Company, shall pay unto the claimant-appellee, Mabel J. Walker, workmen's compensation at Fifteen ($15.00) Dollars per week, or Thirty-seven Hundred Thirty-Five ($3735.00) Dollars, together with interest at six per cent (6%) per annum on each of said weekly payments from the maturity thereof until paid."

It is the claim of the appellant that judgment should have been so worded that in the event of the remarriage of the claimant, or the death of the claimant, the payments should cease, or go to other dependents who might be entitled thereto. Parenthetically, it may be noted that the record contains the following stipulation:

"It is further stipulated that if the claimant is entitled to compensation in this case she is entitled to have the compensation figured on the maximum basis of Fifteen ($15.00) Dollars per week for a period of three hundred (300) weeks. It is further stipulated that the medical expense incurred in connection with the injury and death of Charles E. Walker amounted to $203.45, and the burial expenses in connection with his burial was in excess of $150.00."

It appears that at the time the record was made, approximately 51 weeks' compensation had matured. Necessarily, interest on these items from the date of maturity was due the claimant. The claim for burial expenses of $150.00 had matured, as had the expense for medical, surgical, and hospital services. We find nothing wrong with that part of the decree.

The record shows, without controversy, that the plaintiff is the surviving spouse of the decedent, and therefore, under the provisions of Section 1402, she is conclusively presumed to have been wholly dependent upon the decedent at the time of the injury and death. Moreover, it conclusively appears that at the time of the injury and death the decedent left four children, each of whom was less than sixteen years of age, and under the provisions of Section 1402 of the Code of 1927, Subsection 2, each of said children is conclusively presumed to have been wholly dependent upon the decedent. The provisions of Section 1402, Subsection 1c, are as follows:

"When the deceased leaves no dependent children and the surviving spouse remarries, then all compensation shall cease on the date of such marriage."

Compensation awarded under the Workmen's Compensation Act to a wife with dependent minor children, because of the death of the husband and father, is not forfeited by the remarriage of the wife. See Davey v. Norwood-White Coal Co., 195 Iowa 459; Reeves v. Northwestern Manufacturing Co., 202 Iowa 136.

There remains the remote possibility that all the minors might die before the payments, in regular course, are made. Under such circumstances, by appropriate procedure, the matter may be corrected in accordance with the facts.

VII. We now come to the pivotal point in the case. The appellant contends that the injury did not arise out of and in the course of the employment. Out of the stipulations and the competent evidence in the case, the Industrial Commissioner could properly find that the decedent received his injury, which resulted in his death, while going from his hotel in Pittsburgh to a restaurant near by, to which point he was going for the purpose of getting an evening meal.

As previously noted, it is stipulated that this accident happened shortly after nine o'clock, February 23, 1930, near the intersection of Baum Blvd. and Beatty St. in Pittsburgh, as the decedent was crossing Baum Blvd. The material question of law is whether, under the facts in this case, as proven or stipulated, or properly found by the Commissioner, the decedent came under the Workmen's Compensation Act. There is substantial, competent evidence in the record to support the finding that the decedent had been sent by his employer to various cities in the state of Ohio, and finally he was ordered by wire to report at Pittsburgh, Pa., for the purpose of performing the services of the employer in Pittsburgh. The decedent traveled by train into Pittsburgh, arriving sometime on Sunday afternoon. He registered at his hotel, took a nap, which lasted through the ordinary time for an evening meal, and then inquired, about nine o'clock in the evening, of the clerk where he could get something to eat. He was then directed to a certain restaurant near by. The point at which the accident occurred appears to be reasonably within the line of travel between the hotel office and the restaurant to which he was directed. The fair and reasonable inferences to be drawn from the competent evidence and stipulations in the case are that he received his injuries while going to the restaurant for his evening meal.

While the record shows that his employer did not expect him or require him to work on Sunday, nevertheless it appears that he frequently did transact some of his employer's business on Sunday, and it clearly appears that, on this particular Sunday, he had traveled into Pittsburgh in order to be there for the performance of his employer's work on Monday morning. There is no showing whatever that the decedent had any personal business in Pittsburgh or that he was in Pittsburgh for any purpose other than the employer's work. It does not appear that he

did any of his employer's work other than traveling into Pittsburgh on the Sunday in question. We may properly assume it was not expected that he should do any of the employer's work on that Sunday. The record shows conclusively that the employer paid all of Walker's traveling expenses, such as transportation, hotel bills, and meals. An officer of the company testified that, generally speaking, the decedent, while out on the road on a trip such as that in which he was engaged at the time the decedent was killed, was constantly subject to the employer's orders. This is not disputed.

On the Sunday afternoon and evening in question, he was in Pittsburgh for the sole purpose of doing the employer's work in connection with some machinery which had been shipped to Pittsburgh by the employer. Apparently, this work was to have been done by the decedent on the Monday morning following. At least, there is no showing that he was expected to do any of it on Sunday evening.

The somewhat narrow question then is, Did the injury arise out of and in the course of the employment of the decedent? These questions have been many times before this court. Many of the cases have been recently collected in Enfield v. Certain-teed Products Company, 211 Iowa 1004. We deem it unnecessary to collect or review our cases, and we shall only make quotations therefrom when such seem directly applicable.

It must be borne in mind that the statutory provisions of the Workmen's Compensation Act are to be liberally construed. See Bidwell Coal Company v. Davidson, 187 Iowa 809; l. c. 818; Porter v. Mapleton Electric Light Co., 191 Iowa 1031, l. c. 1033. Other cases might be cited to the same effect.

In Griffith v. Cole Bros., 183 Iowa 415, this court had under consideration a case in which the decedent was in the service of a firm engaged in bridge building. The decedent and others in such employment were, by defendants, lodged and boarded on the ground where the work was done. On the night of the accident, the day's work had been finished, but the employees were in the boarding tent. They had finished washing the dishes, and were sitting in the tent until it became time to go to bed. While thus engaged, the decedent came to his death from a stroke of lightning. After a review of many cases, this court said:

" 'The general rule in construing compensation laws is that

the responsibility of the employer begins when his employee enters his premises to perform the services required of him, and terminates when the employee leaves such premises, provided that he does not loiter needlessly, or arrive at an unreasonable hour in advance of the beginning of his duties.' * * * The test seems to be whether deceased, 'though actually through with the work, was still within the sphere of the work.' * * * was doing what 'a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.' * * * But, on the whole, we incline to think that this employee was injured while in the course of his employment. He was where he was hurt because he had been employed. While his day's work was done, yet he remained where it was his duty to be, in order to begin the next day's work. He remained all the time within the sphere that his employment had fixed.''

In Enfield v. Certain-teed Products Company, 211 Iowa 1004, 1. c. 1013, this court said:

''There remains, however, the question whether or not the foregoing findings and the record involved are sufficient to support the court's finding Number Seven, to wit: 'The claimant's injury did not arise in the course of his employment.' An answer to that question involves the recognition of the primary elements in the phrase 'in the course of employment.' Time and place of employment are fundamentally embraced in the phrase 'in the course of the employment.' '* * * an accident arises ''in the course of the employment'' if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.' Christensen v. Hauff Bros., 193 Iowa 1084, 1089. 'The test seems to be whether deceased * * * was doing what ''a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.'' ' ''

In the same case, the court quoted with approval from Pace v. Appanoose County, 184 Iowa 498, l.c. 505, as follows:

'' 'The test in determining whether the injury has arisen in the course of employment is there (in the Griffith Case) said to

be 'whether deceased \* \* \* was doing what "a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." ' "

In the same case, the court quoted with approval from Christensen v. Hauff Bros., 193 Iowa 1084, as follows:

" 'In other words, if upon consideration of all the circumstances there existed causal connection between the conditions under which Christensen's work was required to be performed and the resulting injury, it could then be said that he was, at the instant of the injury, within the scope of his employment. If the conclusion may be logically reached that the workman's injury followed as a natural incident of his work, and was reasonably contemplated in his employment, then it may be said to have arisen out of the employment.' "

In the same case, this court quoted with approval from Fournier's Case (120 Maine 236, 113 Atl. 270, 23 A. L. R. 1156), as follows:

" 'The words "in the course of the employment" relate to the time, place and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto.' "

In Bushing v. Iowa Railway & Light Co., 208 Iowa 1010, l. c. 1018, this court said:

"An injury occurs in the course of the employment when it is within the period of the employment, at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. \* \* \* An injury in the course of employment embraces all injuries received while employed in furthering the employer's business, and injuries received on the employer's premises, provided that the employee's presence must ordinarily be required at the place of the injury, or, if not so required, employee's departure from the usual place of employment must

not amount to an abandonment of employment, or be an act wholly foreign to his usual work. * * * An employee does not cease to be in the course of his employment merely because he is not actually engaged in doing some specifically prescribed task, if, in the course of his employment, he does some act which he deems necessary for the benefit or interest of his employer.''

The instant case falls readily into that category of cases recognized by many courts of last resort as ''continuous employment'' cases. This court has, in a measure at least, adopted that classification. See Griffith v. Cole Bros., 183 Iowa 415, l. c. 424, 425.

In Haddock v. Edgewater Steel Co. (Pa.), 106 Atl. 196, that court had under consideration a case in which an employee was ordered into another state to make some examinations and to report to the office from which he started. After making the examination, the employee, while on the way to his residence to pass the night, preparatory to reporting at the office the following day, was injured. The court said, among other things:

''Since the deceased was compelled to return to the city at an hour when he could not at once communicate with his superior, and had to stay somewhere until he could report, he cannot be charged with a departure from his employer's service because, when hurt, he was going to his home for a lodging, rather than to a hotel.''

The court found that the injured party met his death by accident during the course of his employment.

In Harivel v. Hall-Thompson Co. (Conn.), 120 Atl. 603, the decedent was a traveling salesman, working under a contract providing for the payment of a salary, commission, and hotel bills. In making one of his trips as a traveling salesman, and while occupying a room in a hotel, the hotel caught fire, and the salesman received injuries. The court said, among other things:

''His employment was continuous, covering the period from the time he left the East until he returned. It did not cease at night when he finished his work. He did not then go to his home, or to a place which he himself provided as a temporary abiding place, but he went to the hotel for lodging and board which his employer provided. While he was on the way from

the East to Richmond to reach the territory in which he should sell the goods of the defendant, he must be held to have been in the course of his employment. His salary covered this period, and his expenses were all paid by his employer. His employment began when he started upon his trip. * * * If the salesman lodged and boarded on the premises of his employer, it would be conceded that his employment continued during this period. There can be no difference in principle between the furnishing of lodging and board by the employer upon his own premises or upon the premises of another. The hotel lodging furnished by the defendant to the claimant was its own for the time being, which it supplied to its salesman. The salesman was not, when injured, engaged upon the immediate duties of his employment, but he was doing something which was incidental to such employment. * * * Did the injury to the claimant arise out of his employment as a salesman? * * * The claimant while in this hotel room was then in the course of his employment. The conditions of that employment required him to lodge in this room at that time. The risk of injury to him from a fire in the hotel was one of the risks connected with the conditions of his employment. * * * The ordinary injury to a salesman in a hotel would fall within the risks of his employment provided his stay in the hotel was made in the course of his business and at the time of his injury he was not then engaged upon his own business, convenience or pleasure.''

See also Stansberry v. Monitor Stove Co., (Minn.) 183 N. W. 977, in which the Supreme Court of Minnesota held that a traveling salesman injured in a hotel fire received injuries which arose out of and in the course of his employment.

In Rainford v. Chicago City Railway Co., (Ill.) 124 N. E. 643, that court had under consideration an application for compensation on the part of a street railway conductor who stopped his car in order to cross the street to order his lunch. While in the act of crossing the street, he was struck by another car and injured.

''To arise out of the employment the accident must be incidental to performing the contract of service. The accident must also be suffered in the course of the employment in the doing of something which the employee may reasonably do with-

in a time during which he is employed and at a place where he may reasonably be during that time to do that thing. * * * Such an act as procuring lunch is reasonably incidental to the performance of the work of an employee, being one of the necessities imposed by nature. That which is reasonably necessary to the health and comfort of the employee, although personal to him, is incidental to the employment and service.''

In the case of In re Harraden (Ind.), 118 N. E. 142, that court said:

''Where the duties of the employee require him to travel and visit different places in order that he may discharge the duties of his employment, his place of work is thereby enlarged or extended to include all the places to which such employee necessarily goes in discharging the duties of his employment.''

In Industrial Commission of Colo. v. Aetna Life Ins. Co. (Colo.), 174 Pac. 589, 3 A. L. R. 1336, the court said:

''It seems to be generally held by the English courts that employment is not necessarily synchronous with contract of service, but that, in all those things that he is entitled to do by virtue of his contract, he is for the purposes of the act employed to do, and they are therefore within his contract of employment. * * * 'It is well settled that the employment is not confined to the actual working, whether in a pit or at any other trade, in which the workman may be engaged. He is employed, not only to work in the pit, but also to do other things that he is entitled to do by virtue of his contract of employment; for example, he is entitled to do, and therefore employed to do, such acts as coming on the employer's premises, passing and repassing for all legitimate purposes connected with his work on the premises, such as getting to the pit's mouth, going to get his wages, going to make proper inquiries from proper officers, or taking a train which he is entitled to use by virtue of his contract of service. * * * All those things that he is entitled to do by virtue of his contract he is for the purposes of the act employed to do, and they are therefore within his contract of employment.' ''

In Bushing v. Iowa Railway & Light Co., 208 Iowa 1010, this court said:

"An accident to an employee may arise in the course of his employment although he is not actually working at the time of the injury."

See Nester v. H. Korn Baking Co., 194 Iowa 1270; Kent v. Kent, 202 Iowa 1044. Many other cases might be cited. It seems quite clear that, in accordance with the weight of authority in this and other states, the decedent in this case was doing what a man employed as he was might reasonably do, within a time in which he was employed, and at a place where he might reasonably be during that time. The injury arose in the course of his employment.

It is contended that the injury did not arise out of the employment. It must be recalled that, while Walker had the option to select the place where he would eat and the time he would eat, yet his meals were paid for by his employer. As previously stated, the employer paid all of the traveling expenses, including transportation, hotels, and meals. It was necessary that Walker should travel, that he should rest at hotels, and that he should eat meals. It was as necessary to the performance of his work that he sustain himself by eating as that he reach the place where the work was to be performed by certain transportation. By virtue of his employment, he was where he could not eat at home or at his regular boarding place. He was, in a sense, living in the employer's quarters, and at the time of the accident was on his way to get a meal furnished to him by the employer. This was a necessary incident to the work. He could not do the work without sustaining himself. He was in the city of Pittsburgh solely because he had been ordered there by his employer. He was waiting there to do the work of the employer. While waiting, it was incumbent and necessary that he sustain himself with food. He was in the act of passing between his hotel and the place where food was to be obtained, when the accident occurred. We think the injury arose out of the employment. See Pace v. Appanoose County, 184 Iowa 498; Rish v. Iowa Portland Cement Co., 186 Iowa 443, l. c. 448. In the latter case this court said:

"Injuries received while the workman was engaged in ministering to himself, such as warming himself, seeking shelter,

quenching his thirst, taking refreshment, food, fresh air, or resting in the shade, have been held compensable.''

We think that, on the facts in this case, the injury arose out of the employment.

Manifestly, the employee, while out on a trip such as the one being taken by Walker, and under such circumstances, might receive injury in doing many things for which compensation would not lie. The act being done must have a close causal connection with and be incident to the employment. For illustration: Had Walker, on the evening under consideration, passed out of the hotel to cross the street to go to a theater, solely for his own amusement, and in so crossing the street received an injury, compensation would not lie.

The employer is not an insurer of the safety of the employee. Any time the employee steps aside from the line of duty in the employment, compensation coverage ceases.

Appellant relies mainly upon three cases: ' Forman v. Industrial Accident Commission, (Calif.) 160 Pac. 857; Davidson v. Pansy Waist Co., (N. Y.) 148 N. E. 715; Wynn v. Southern Surety Co., (Texas) 26 S. W. (2nd Series) 691.

In the Forman case, the facts are such as to clearly distinguish it from the case at bar. The employee received the injury at a place where he was to remain more or less indefinitely, to the extent that, in a sense, he established for himself a home. The Davidson case is distinguishable upon the facts. In the Wynn case, the court seems to have completely ignored the distinction between the so-called ''continuous employment'' cases and ordinary cases.

We approve the ruling of the trial court, and the cause must be, and is,—Affirmed.

WAGNER, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.