JAMES L. YATES, JR., Appellee, v. JAMES L. HUMPHREY, JR., et al., Appellants.

No. 42552.

JUNE 23, 1934.

REHEARING DENIED SEPTEMBER 27, 1934.

W. M. McLaughlin, for appellants.

D. L. Murrow and T. W. Miles, for appellee.

DONEGAN, J.— The plaintiff-appellee, James L. Yates, Jr., was an employee of James L. Humphrey, Jr., who conducted a produce plant in the town of Humeston in Wayne county. On the 21st day of November, 1932, Yates during working hours went across the street from the plant to get a jug of water for the use of the employees in the produce plant. As he was returning to the plant with the jug of water and had reached the premises of his employer, he saw a man named Buck upon the premises endeavoring to back an automobile trailer to a cinder pile from which said Buck was accustomed to haul cinders. Buck appeared to have some difficulty in pushing the trailer to the pile of cinders, and Yates set down his jug of water and took hold of the trailer in an attempt to assist him. In so doing, Yates ran a sliver into the thumb of his right hand. After helping push the trailer, Yates went into the plant, removed the sliver, and proceeded to his work. He continued his work for the balance of that day and the following two days, and on the night of the second day he began to notice a throbbing in his thumb. He then went to see a doctor, who found that the thumb and arm were infected and sent him to a hospital at Centerville, where he was treated for about a month. As a result of the infection, he sustained a disability of the thumb and fingers of his right hand which will be permanent.

No agreement having been reached between him and the employer as to compensation under the Compensation Act, Yates, on the 14th day of June, 1933, filed a claim for compensation with the Iowa industrial commissioner against his employer, Humphrey, and against Bruce Dodson Company, who it is stipulated is the insurer under a policy of liability insurance covering injuries to the employees of the defendant Humphrey. By agreement, the appointment of arbitrators was waived, and hearing was had before the deputy industrial commissioner, who rendered a decision finding that the claimant's right hand was permanently disabled to the extent of 75 per cent as the result of the injury sustained by him on November 21, 1932, and that the said injury was sustained as the result of an accident arising out of and in the course of his employment. An order was accordingly entered by the deputy industrial commissioner requiring the defendants to pay the claimant weekly compensation and also the statutory medical, surgical, and hospital benefits and costs of the hearing. From this decision of the deputy industrial commissioner, the defendants in due time

filed a petition for review before the industrial commissioner, and on such review the industrial commissioner sustained the finding and order of the deputy industrial commissioner. Thereafter the defendants appealed to the district court of Wayne county, where a hearing was had and a judgment was entered affirming the decision of the industrial commissioner. From such judgment and decree of the district court of Wayne county, the defendants appeal to this court.

Several grounds of error are alleged and argued by the appellants, but they may all be reduced to the ultimate proposition that the district court erred in entering its decree and judgment in favor of the appellee, because the evidence failed to show that the injury sustained by plaintiff arose out of and in the course of his employment.

There is no dispute in this case that the plaintiff did sustain an injury by having a sliver run into his thumb under the circumstances as alleged by him; that his thumb and hand became infected within a few days thereafter, and that, as a result of the injury and infection, the hand has been permanently disabled to the extent as found by the industrial commissioner and the district court. There is likewise no dispute as to the procedure on the hearing before the deputy industrial commissioner or on the review by the industrial commissioner, or in connection with the appeal to the district court. Sections 1452 and 1453, Code 1931, are as follows:

"1452. * * * The transcript as certified and filed by the industrial commissioner shall be the record on which the appeal shall be heard, and no additional evidence shall be heard. In the absence of fraud the findings of fact made by the industrial commissioner within his powers shall be conclusive.

"1453. * * * Any order or decision of the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds and on no other:

"1. If the commissioner acted without or in excess of his powers.

"2. If the order or decree was procured by fraud.

"3. If the facts found by the commissioner do not support the order or decree.

"4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

It is not claimed that the commissioner acted without or in excess of his power, or that the order entered by him was procured by fraud. The only question presented for our determination is whether the facts found by the commissioner support the order entered by him, and whether there is sufficient competent evidence in the record to warrant the decision of the commissioner. Appellant contends that, because the appellee admits that he went about ten feet out of his way, on returning with his jug of water, to help push the trailer; because he had not been ordered to help the man who was taking cinders, either on this occasion or on any other occasion; because the party who was taking the cinders was not an employee of the appellant owner of the plant and was taking the cinders for his own benefit under an arrangement made with the owner of the plant; because none of the employees had ever been directed to assist this man or any other person with the cinders; and because the appellee admits in his evidence that he assisted in pushing the trailer "just to be decent and courteous;" the act of the appellee in assisting Buck with the trailer was a voluntary act on his part, was outside of the scope of his employment, and that the injury received by him cannot be said to have arisen out of and in the course of his employment.

It appears in the evidence, however, that, while the duties of the appellee usually consisted in wrapping the heads of chickens. with paper after they had been killed and dressed by other employees, the scope of appellee's employment was not confined to this particular duty. The plant of the appellant in which appellee was employed not only handled poultry both alive and dressed, but also handled eggs, conducted a creamery, and manufactured butter. The appellee's evidence showed that, in addition to wrapping heads of chickens, he had at times slaughtered chickens, helped to weigh them, put down hides, and booked cars. It further appears in the evidence that the town of Humeston is a town of 900 to 1,000 inhabitants, and that it is a generally established custom in that community and in the plant in which appellee was employed for all persons to render a neighborly assistance to others; and that both the employer and the employees of the plant understood and expected that all employees would extend acts of courtesy and assist its patrons when in and about the plant. The evidence shows that the man Buck, who was trying to back his trailer in place preparatory to hauling cinders, was then upon the premises of the ap-

pellant, and that, while he paid nothing for the cinders and was not paid for removing them, he and other patrons of the plant were allowed to take the cinders without remuneration. While the cinders were undoubtedly of some benefit to Buck and other patrons who hauled them away, it appears in the evidence it was of benefit to the appellant plant that such cinders should be removed, and that, if such patrons had not removed them, the appellant owner of the plant would have been put to the trouble and expense of removing them. It is quite apparent, therefore, that the removal of the cinders from the plant was of benefit to the appellant owner thereof. It further appears in the evidence that on different occasions employees of the plant had assisted patrons of the plant in connection with the removal of the cinders. The man Buck, who was removing the cinders at the time in question, had never had any assistance from any of the employees of the plant in pushing his trailer into position, but he states that he had received assistance from employees of the plant when hauling cinders with a wagon. It is true that he states that the last assistance which he had received was probably eight to ten years previous to the occasion in question, but he testifies he had received such assistance on several occasions and that such acts of courtesy were customarily rendered by employees of the plant. The manager of the plant testified that, while he had not given any of the employees specific orders in regard to assisting persons who were removing the cinders, and would not say that this was a specific duty of employees, the rendering of assistance to patrons was a matter of courtesy that was expected of the employees, and that he would expect a hired man at the plant to help a man if he needed it. He also said that such was the habit and custom of the people and had always been customary around the plant.

We think it sufficiently appears in the evidence that not only the habits and customs of the people of the community generally, but the general nature of the work performed by the employees in the appellant's plant and the general spirit of helpfulness toward patrons of the plant, were such that the employees had reasonable grounds for believing, and that they understood, that their work was not limited strictly to the performance of specific duties, but that they were expected to perform such acts of courtesy and helpfulness toward patrons of the plant as would promote good will and redound to the benefit of their employer. As said in Bushing v. Iowa Railway & Light Co., 208 Iowa 1010, 226 N. W. 719:

"In other words, the Compensation Act does not contemplate that an employee may not momentarily step outside of the circumference of his working place. The employee is not a mere automaton or machine set down in a particular place and required to stay there. His comfort and safety and the employer's interests are, to a greater or less degree, committed to the judgment of the employee. * * * An employee does not cease to be in the course of his employment merely because he is not actually engaged in doing some specifically prescribed task, if, in the course of his employment, he does some act which he deems necessary for the benefit or interest of his employer."

In Bryant v. Fissell, 84 N. J. Law, 72, 86 A. 458, cited with approval by this court in Christensen v. Hauff Bros., 193 Iowa 1084, loc. cit. 1088, 188 N. W. 851, it is said:

"For an accident to arise out of and in the course of the employment, it must result from a risk reasonably incidental to the employment. * * * We conclude, therefore, that an accident arises 'in the course of the employment' if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time."

In Christensen v. Hauff Bros., supra, l. c. 1091, this court said:

"In other words, if, upon consideration of all the circumstances, there existed causal connection between the conditions under which Christensen's work was required to be performed and the resulting injury, it could then be said that he was, at the instant of the injury, within the scope of his employment. If the conclusion may be logically reached that the workman's injury followed as a natural incident of his work and was reasonably contemplated in his employment, then it may be said to have arisen out of the employment."

In Enfield v. Certain-Teed Products Co., 211 Iowa 1004, loc. cit. 1013, 233 N. W. 141, we said:

"There remains, however, the question whether or not the foregoing findings and the record involved are sufficient to support the court's finding No. Seven, to wit, 'the claimant's injury did not arise in the course of his employment.' An answer to that question

involves the recognition of the primary elements in the phrase 'in the course of employment.' Time and place of employment are fundamentally embraced in the phrase 'in the course of the employment.'

" ' * * * An accident arises "in the course of the employment" if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time.' Christensen v. Hauff Bros., 193 Iowa 1084, 1089.

" 'The test seems to be whether deceased * * * was doing what "a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." ' Griffith v. Cole Bros., 183 Iowa 415, on pages 425 and 426."

In Walker v. Speeder Mach. Corp., 213 Iowa 1134, loc. cit. 1149, 240 N. W. 725, this court said:

"Many other cases might be cited. It seems quite clear that, in accordance with the weight of authority in this and other states, the decedent in this case was doing what a man employed as he was might reasonably do within a time in which he was employed and at a place where he might reasonably be during that time. The injury arose in the course of his employment."

In Holland-St. Louis Sugar Co. v. Shraluka, 64 Ind. App. 545, 116 N. E. 330, it is said:

"In general terms an accident may be said to arise out of the employment when there is a causal connection between it and the performance of some service of the employment. (Cases cited.) The causal relation is established when the accident is shown to have arisen out of a risk which a reasonable person might have comprehended as incidental to the employment at the time of entering into the employment or, when the evidence shows an incidental connection between the conditions under which the employee works and the resulting injury."

We think the evidence in the instant case is sufficient to show that the accident arose out of a risk which the appellee might reasonably have comprehended as incidental to his employment, and that the industrial commissioner could properly find therefrom that

there was an incidental connection between the conditions under which the appellee was working and the resulting injury.

Moreover, it is clearly not the intention of the law that the provisions of the Workmen's Compensation Act should be construed with the strictness and according to the technical rules of evidence and procedure that are applied in other legal proceedings. Section 1441, of the code of 1931, provides that:

"While sitting as a board of arbitration, or when conducting a hearing on review, or in making any investigation or inquiry, neither the board of arbitration nor the commissioner shall be bound by common law or statutory rules of evidence or by technical or formal rules of procedure; but they shall hold such arbitrations, or conduct such hearings and make such investigations and inquiries in such manner as is best suited to ascertain and conserve the substantial rights of all parties thereto. Process and procedure under this chapter shall be as summary as reasonably may be."

In Rish v. Portland Cement Company, 186 Iowa 443, 170 N. W. 532, this court said:

"As will be observed from a careful reading of the cases cited, the tendency of the courts in all jurisdictions, where similar acts are in force, is to give a broad and liberal construction to the provisions thereof."

In Bidwell Coal Co. v. Davidson, 187 Iowa 809, loc. cit. 818, 174 N. W. 592, 8 A. L. R. 1058, we said:

"The statute is to be liberally construed so as to get it within the spirit, rather than within the letter of the law. See Brienen v. Wisconsin Pub. Serv. Co., 166 Wis. 24, 163 N. W. 182. In construing the provisions of the Compensation Law the court is bound, not to a narrow, technical construction, but rather to a broad and liberal construction to make effectual the very purposes for which the law was passed. Rish v. Iowa Portland Cement Co., 186 Iowa 443; State v. District Ct. of St. Louis County, 128 Minn. 43, 150 N. W. 211."

In Holland-St. Louis Sugar Co. v. Shraluka, 64 Ind. App. 545, 116 N. E. 330, it is said:

"The courts are practically unanimous in holding that the words 'by accident arising out of and in the course of employ-

ment,' as used in the Workmen's Compensation Acts, should be given a broad and liberal construction in order that the humane purpose of their enactment may be realized." (Citing cases.)

In State ex rel. Duluth Brewing Co. v. District Court of St. Louis County, 129 Minn. 176, 151 N. W. 912, the court uses the following language:

"The law in question was intended to relieve against the hardships resulting from the many unfortunate accidents which do take place in this age of extensive use of complicated machines and appliances, and of great enterprises necessitating the indiscriminate employment of large forces of laborers and mechanics. All question of the employer's fault or negligence is eliminated from cases arising under this act. The intention was to compensate all accidental injuries growing out of and received in the service, except those intentionally self-inflicted or due to intoxication. The statute is highly remedial in character. The courts ought therefore to guard against a narrow construction, and should not exclude a servant from the benefits thereof, unless constrained by unambiguous language or the clear intent as gathered from the entire act."

Following the well-recognized rule of liberal construction that must be applied in compensation cases, and applying the principles of construction laid down in the cases cited, we conclude that it cannot be said, as a matter of law, that the facts found by the commissioner do not support the order entered by him, or that there is not sufficient competent evidence in the record to warrant the making of the order which was entered in this case.

The order and decree of the district court sustaining the finding of the industrial commissioner is therefore affirmed.—Affirmed.

EVANS, STEVENS, MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.

CLAUSSEN, C. J., and ALBERT, J., dissent.