J. F. Bowermaster, Administrator, Appellee, v. Universal Producing Company et al., Appellants.

No. 43284.

April 7, 1936.

Rehearing Denied October 2, 1936.

McNett, Kuhns & Brown, for appellants.

Thoma & Thoma, for appellee.

Richards, J.—Plaintiff-administrator seeks to recover damages on account of his decedent's alleged wrongful death. The decedent, riding in an automobile as a guest of defendant Barns, received injuries when the automobile, being driven by Barns, collided with a truck. The remaining appellants were owners of the car and had consented to its use by Barns. Plaintiff claims the injuries received eventually caused decedent's death.

Section 5026-b1, Code 1931, provides that the owner or operator of a vehicle shall not be liable for any damages to any passenger or person riding in said automobile as a guest, unless damage is caused as the result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle. Decedent

having been a guest within the meaning of this statute, plaintiff seeks to recover on account of one of the exceptions contained in the section; that is, plaintiff seeks to recover because of the alleged reckless operation by Barns of the motor vehicle at the time decedent was injured. Whether the evidence warranted the submission to the jury of such issue of reckless operation is raised by appellants' assignments of error. In order to consider the question so raised, we proceed to summarize the pertinent evidence.

The accident happened at about 1:30 p. m. on May 7, 1933, about a mile west of the city of Fairfield, on primary highway No. 34, which had paving 18 feet in width, with dirt shoulders on either side. Earlier in the day there had been rain, and at the time of the accident the shoulders of the highway were muddy and the paving wet. Whether it was still raining at the time of the accident is in dispute. From a point a mile or more east of the place of the accident to a point a mile or more west thereof the highway in question extends east and west without any material curvature. The accident occurred about 175 feet east of a private driveway into the Stever farm home on the south side of the highway. At this place of the accident a Chevrolet one-ton truck, with a load of 3,100 pounds of coal, while proceeding toward the east, had stopped on account of exhaustion of its fuel supply. After stopping, it stood on the south half of the paving with room enough between the truck and the south edge of the paving to permit the driver to stand on the paving on the south side of the truck. The truck stood in this position for five minutes or a little longer, while its driver and his brother, the Smiths hereinafter mentioned, examined the ignition connections and then examined the fuel tank, finding it empty. In the meanwhile Barns was driving east on this highway in the direction of the stalled truck. It is the testimony of Barns and others who were in the car with him that the truck was observed as they came up a so-called hill from the west at 35 miles per hour; that Barns then reduced his speed, and at a point 15 feet east of the driveway was gradually veering to the north side of the pavement to go around the truck; that when, in making this movement, the left side of his car was over the black line far enough to see around the truck, a car was observed coming rapidly from the east on the north side of the pavement, its speed being too great to permit Barns to occupy the north side of

the pavement in passing the truck; that Barns thereupon applied his brakes and turned toward the south side of the pavement when at least 25 or 30 feet west of the truck; that the brakes then slid all four wheels on the wet paving; that this did not entirely stop the momentum of the car, the result being that the car slid into the northwest rear corner of the truck and stopped, the center of the radiator of the car striking the wooden beam that extended lengthwise under the north side of the floor of the truck. All witnesses agree that the brakes slid the four wheels, and that the car hit the truck in the manner just stated, and stopped, but the appellee's witnesses testify that the wheels slid for a less distance then 25 or 30 feet.

One of the Smiths, operating the truck, testified that, standing 30 or 40 feet west of the truck, he observed defendant's car approaching at 50 or 55 miles per hour, when it was 100 feet west of the witness; that he then stepped on the paving, waved his arm up and down as a warning signal, and then stepped off the paving; that defendant's car continued on at all times on the south half of the pavement, without slacking speed, until within 15 or 20 feet of the truck, when all the tires began to slide and the car slid into the truck. The other Smith testified that, standing on the pavement on the south side of the truck, he also moved his hand up and down, that defendant's speed was 50 miles per hour, and that defendant's car did not slacken its speed until within 10 feet of the truck. But this witness also testified that, when the defendant's car was no less than 20 feet from the truck, the witness, facing south, was proceeding south over the shoulder toward the ditch, and was still proceeding in that direction when he heard the noise of the collision. It would appear he did not in fact observe the last 20 feet of the course of the Barns car. When defendant's car stopped upon striking the truck, its left rear wheel was north, and its left front wheel was south, of the center line of the paving. All witnesses so testify. The floor of the truck was about 4 feet above the paving, and by the force of the impact the car's radiator was shoved under the floor of the truck and mashed down, the headlights were bent and their glasses broken, and a fender possibly dented. The truck was moved forward about 6 inches by the force of the collision. The only injuries to the defendant's car was the mashed-down radiator, the bent headlights and hood, and a possible denting of a fender, and broken glass in the headlights.

The injuries to the truck involve a description of its structure. Two wooden 4x4 beams, about 8 feet long, had been bolted to the chassis. The bolts were through holes bored in the beams. These ran lengthwise and were about 4 feet apart. Four wooden crosspieces 2x2 in size were nailed to the beams. Inch boards were nailed to the crosspieces to form the bed of the truck. The boards were not tongued and grooved. The sides were inch boards about 12 inches high. There was no endgate. At the front end was an ordinary cab with a rear glass window and glasses in the doors and a glass windshield. The body had been made by the owner and his laborers in a coal yard. The impact of the collision raised the rear corner of the truck temporarily, broke the left 4x4 beam, and shoved forward the left side of the floor of the truck, and the cab. After the collision, the cab was pushed back to its proper position and the truck proceeded to town under its own power. The only repairs needed consisted of a new beam and some new crosspieces for the floor of the truck. No glass in either the truck or the defendant's car was broken except defendant's headlights.

An important matter that is undisputed is the fact that, simultaneously with the collision between defendant's car and the truck, another car proceeding west at a high rate of speed passed the place of the collision. In so doing this car occupied the north half of the paving. This car passed on for a considerable distance, stopped, and proceeded again without returning.

On the question before us the evidence should be viewed in a light as favorable to appellee as is reasonably possible. Applying that rule, it is the claim of appellee that the jury could have found from the testimony that Barns was driving on wet paving, at a speed of 50 to 55 miles per hour, and, while traveling the 130 to 140 feet immediately west of the truck, remained wholly on the south half of the paving, and that he did not check his speed until within 10 or 20 feet of the truck, and that he made the statement that he did not see the truck until he hit it. Appellee claims that, if these facts were found by the jury, it would have warranted them in concluding that Barns operated the car in a reckless manner. These alleged facts pointed out by appellee cannot be considered apart from the admitted physical facts and verities in the record, and, if the testimony, relied on to establish these alleged facts, is in conflict

with incontestable facts and entirely inconsistent with any theory other than that the witnesses were mistaken, such facts cannot be depended upon as warranting a verdict. McGlade v. City of Waterloo, 178 Iowa 11, 156 N. W. 680; First Savings Bank v. Edgar, 199 Iowa 1136, 1138, 199 N. W. 1011.

First referring to the claim that defendant made a statement that he did not see the truck until he hit it, a careful reading of the record and the established facts would in our opinion lead all reasonable minds to conclude that such testimony was without probative substance and the witness mistaken. The point to such testimony would of course be to establish that Barns was oblivious to the surroundings and was keeping no lookout ahead, as bearing on the question of recklessness. However, such proposition is so entirely negatived by the established facts and circumstances that a verdict could not be sustained which depended on such testimony. Meyer & Bros. v. Houck, 85 Iowa 319, 52 N. W. 235; In re Estate of Work, 212 Iowa 31, 233 N. W. 28.

The testimony of the witnesses Smith with respect to speed is difficult to harmonize with the known physical facts, applying the rule we have mentioned. The paving was wet, and cars coming from the private driveway had deposited mud thereon to some extent not definitely indicated. The witnesses Smith testified that in their opinion a speed of 50 to 55 miles per hour was maintained by Barns until within 10 or 15 to 20 feet of the truck, and that, the brakes being then applied, the four wheels slid on the wet pavement. If their testimony is true, that is, if their judgment of the rate of speed was accurate, then the sliding of the wheels on wet and more or less muddy paving, for whatever the distance may have been, reduced the speed of 50 or 55 miles per hour to whatever was the rate of speed at the instant of the collision. The admitted physical facts make it certain that at the instant of the collision the speed and momentum of the Barns car was not very considerable. No other conclusion can be deduced from the comparatively slight breakage of the car and the truck. This has been described, including the flimsy strength of the homemade truck body and the comparatively ineffective resistance it afforded. The truck was moved forward only about 6 inches, but in that connection it should be said the hand brake had been set; its effectiveness or efficiency not being shown. The lack of great momentum is further estab-

lished by the fact that the Barns car stopped when the radiator shoved under the floor of the truck, and, although they lurched forward, none of the occupants of the Barns car were thrown down or out of their seats. In that connection the front seat was occupied by Barns, his wife and two children, none of whom were injured excepting that Barns received a slight scratch and an insignificant bruise on his leg. In the rear seat was the decedent, another adult, and a child eleven or twelve years old. The other adult injured her nose in some manner. The child was uninjured. Plaintiff's decedent was sitting in an oblique position at the left side of the rear seat with her left leg, which was broken and which is the injury complained of, in the vicinity of a footrest above the floor anchored at both ends, and so constructed that decedent's foot and lower part of leg could have been held under the footrest at the time of the forward lurch of those in the car. Plaintiff's decedent received no other injuries. When the car stopped, all occupants promptly alighted without difficulty excepting only plaintiff's decedent. No glass was broken in the truck or the car, except the headlights.

Consideration of all the undisputed facts and circumstances leads to the conclusion that there was not sufficient evidence, including that with respect to speed, to warrant a jury in finding that Barns was operating the car in a reckless manner. We think this is true even if we leave out of consideration the testimony of Barns, which is highly corroborated by the position of his car when it came to a stop, and, if we leave out of consideration the testimony of the sheriff of Jefferson county as to the location of marks of the sliding tires, beginning about 30 feet west of the place of the accident, and with the left marks north of the center line and with the direction of the sliding marks leading from that point toward the southeast to the place of the collision. On the question of recklessness, an important consideration is the fact that Barns was faced with more or less of a sudden emergency. His lane of travel was blocked. The remaining north lane of travel was occupied by an approaching car. Appellee pleaded in his petition that "said truck at said time was loaded with coal and the place at which same was left standing * * * was at the top of a hill and in such position as to obstruct the view of the drivers of cars traveling toward the east, and prevent and make difficult for the drivers of such cars traveling toward the top of said hill, to see and ascertain whether

or not any other cars or vehicles were approaching said point from the east.'' Thus appellee by his own pleading has foreclosed denial by him of this difficult situation in which Barns was placed, as set out by appellee. Lashbrook v. Eldridge, 55 Iowa 344, 7 N. W. 584; Shipley v. Reasoner, 87 Iowa 555, 54 N. W. 470. Under all these circumstances an error of judgment or an inadvertence might now be pointed out, but that in itself is not recklessness. Brown v. Martin, 216 Iowa 1272, 248 N. W. 368; Peterson v. Detwiller, 218 Iowa 418, 255 N. W. 529. The elements of recklessness, as many times defined by this court, are not evident in this record. Appellee in argument cites White v. Center, 218 Iowa 1027, 254 N. W. 90, but in our opinion it does not support appellee's contention. It would serve no useful purpose to recite the many elements of fact in that case not found in the case at bar. The distinction between recklessness and negligence having been recently and frequently pointed out in our prior opinions, we deem it unnecessary again to review those matters, and are content to say that the evidence did not warrant submitting to the jury the question of reckless operation of the automobile by Barns. The court should have sustained defendants' motion for a directed verdict at the close of the evidence.

It follows that this case must be, and is, reversed.—Reversed.

DONEGAN, C. J., and ANDERSON, STIGER, PARSONS, ALBERT, and HAMILTON, JJ., concur.