## BUHLER v. MADDISON

No. 6517.   Decided September 3, 1943.   (140 P. 2d 933.)

40

42

*A. H. Hougaard* and *A. W. Hougaard,* both of Salt Lake City, for appellant.

*Delbert M. Draper,* of Salt Lake City, for respondent.

McDONOUGH, Justice.

This action was brought by plaintiff Buhler to recover damages for personal injuries suffered by him in the course

of his employment while working on the Lone Pine lode mining claims near Elko, Nevada. Defendant W. E. Maddison and one Howard E. Grant were joint owners of these mining claims. In the complaint plaintiff alleges that Grant was the agent for Maddison, and that defendant failed to cover his employees with workmen's compensation insurance, and that the injuries resulted from the negligence of defendant in furnishing defective fuse.

This case has been tried twice by jury. Each time a substantial verdict has been rendered in favor of plaintiff. Following entry of judgment on the verdict at the conclusion of the first trial, defendant not only made a motion for new trial, but he also moved for judgment of "no cause of action notwithstanding the verdict" on the ground that by an answer to a special interrogatory the jury found that there were not three or more persons in the employ of defendant. The answer of the jury justified setting aside the general verdict and the granting of a new trial. Notwithstanding the trial court granted his motion for new trial, defendant asserts that the court erred in denying his motion for judgment notwithstanding the verdict. Even in some jurisdictions where the latter motion is permissible, the granting of a motion for new trial obviates ruling on a motion for judgment notwithstanding the verdict even if timely made. See *Spruce* v. *Chicago, R. I. & P. R. Co.,* 139 Okl. 123, 281 P. 586.

We call attention to the fact that trial procedure in this state is quite definitely outlined in our Code of Civil Procedure. *In Kirk* v. *Salt Lake City,* 32 Utah 143, 89 P. 458, 12 L. R. A., N. S., 1021, this court held that in view of our trial procedure as established by statute, a trial court has no authority to entertain a motion for judgment nothwithstanding the verdict by reason of any deficiency in proof; and that if the evidence is insufficient to warrant a verdict or judgment in favor of plaintiff, defendant may request a directed verdict in his favor, or, after entry of judgment, he can challenge the sufficiency of

the evidence by a motion for new trial. Inasmuch as the defendant here was granted the alternative relief he requested—a new trial—and he proceeded to trial the second time, we need not be concerned with the bill of exceptions relating to the first trial.

It is not disputed that the Lone Pine claims where plaintiff was working at the time of his injuries were owned, not by Dr. Maddison alone, but by Maddison and Grant. Plaintiff attempted to show that he was hired by Maddison in Salt Lake City about March 12, 1941, to do the annual assessment work; that he was to go to Nevada to perform such work as soon as weather conditions permitted; and that Maddison agreed that he should be covered by workmen's compensation insurance, although no workmen's compensation insurance was ever obtained. Plaintiff testified that on May 22 he reported to the American Beauty Mines which are near the Lone Pine claims, where he met Grant and a man named Barnes, who put him and his helper Kay to work on the Lone Pine claims. The materials, supplies, fuse, caps and powder were furnished by defendant and Grant. He testified that he told Grant the fuse had been wet and that it was defective; and that he subsequently made some tests which disclosed that the fuse burned unevenly and much slower than good fuse. Prior to the date of the accident he and his helper had drilled from 175 to 200 holes and prepared a corresponding number of charges, but that they had only 3 or 4 "missed holes," or about the average number of missed shots or unexploded charges for that number of holes under normal conditions.

Although Dr. Maddison came out to the mine in June, nothing was said to him about any defects in the fuse, either by plaintiff or his helper. Plaintiff continued to use the same fuse. On July 2, 1941, he placed a charge of dynamite in a hole in the tunnel to which he attached the primer—a piece of fuse about 14 inches in length with the cap attached. He lighted the fuse and he and Kay then retired a safe distance and waited from 5 to 8 minutes for the charge to

explode, but hearing no explosion, he believed the fuse had stopped burning before reaching the cap and the dynamite. He entered the cross-cut which constituted the approach to the tunnel to pick up a length of fuse to make a new primer, when the charge exploded, hurling rocks and dirt, causing facial injuries and the loss of his left eye, as well as body bruises.

Plaintiff attempted to prove that on the day of the accident defendant was the employer of three or more men in the same business or activity in which plaintiff was working. Without objections, at the second trial plaintiff introduced a part of the Nevada workmen's compensation laws, although he did not plead them. The court overruled the motion of defendant to require plaintiff to state upon what law, whether Utah or Nevada, he relied for recovery,

If plaintiff can recover, he must do so within one of the following three legal categories: (1) Negligence of the employer, as defined by the common law; (2) the Utah workmen's compensation statutes; or (3) the Nevada workmen's compensation laws.

To recover under any theory of common law negligence, the evidence must be sufficient to reasonably justify the jury in finding that defendant was guilty of negligence which proximately caused plaintiff's injuries, and that plaintiff was not guilty of contributory negligence, and that he did not assume the risk here involved. The only negligence alleged is that defendant furnished plaintiff with defective fuse. Plaintiff concedes that he discovered that the fuse had been wet and that it was slow burning, when he first came to the Lone Pine claims, and that he conducted experiments which demonstrated that certain parts burned more slowly than others; also that at times the fuse burned out before the fire reached the charge, although he had only 3 or 4 "missed holes" or shots. However, in each case when a charge failed to explode prior to the time of the accident, he waited from 15 to 20 minutes before going into the tunnel to set a new primer. He also admitted he was

aware of the safety regulations of both Utah and Nevada which forbid going into a tunnel or other area where a charge has been set until 45 minutes after the time when it normally should have exploded. In this case he waited only 5 to 8 minutes, and went into a place of known danger where a substantial charge of dynamite had been connected with a fuse which he left burning. He knew the fuse was defective in that there was delayed burning, and that in any event a state safety regulation prohibited any approach of said danger zone for 45 minutes. Even if the employer was guilty of negligence in furnishing such slow-burning fuse, it would be unreasonable to find that plaintiff was not guilty of contributory negligence under such circumstances. Thus, under the common law doctrine of negligence and contributory negligence, plaintiff cannot recover.

Nor does the evidence permit recovery under the Utah workmen's compensation laws. Under our statutes the evidence must be sufficient to reasonably justify a finding that the employer at the time of the accident had in his

"service three or more workmen or operatives regularly employed in the same business, or in or about the same establishment." 42-1-40, U. C. A. 1943.

At the time of the accident plaintiff and his helper Kay were doing the annual assessment work on the Lone Pine claims. There is no question as to the fact that Grant was a co-owner with defendant, and that Grant was not the employee of defendant. Defendant was advancing money to pay for the assessment work. At this time the American Beauty Mines, Inc., had a lease on some mining property about three-fourths of a mile down the canyon from the Lone Pine claims, on which there were several tunnels, a mill, some machinery and other facilities. Plaintiff and Kay lodged in a cabin on the American Beauty Mines property. This company was a Nevada corporation. Defendant was its president, and he owned something less than half of its capital stock. However, he paid various expenses in-

curred by the company in the development of its properties. Grant was not a stockholder in this company, but he had a sublease on part of its property. He had developed some ore and had constructed some roads. On the day of the accident there were two Basques working in the tunnels on the American Beauty Mines properties. They did no work on the Lone Pine claims, although there is some evidence that plaintiff sharpened their tools. For failure to pay the fee of $7.50 for filing a list of officers for 1941-1942, said corporation was not "in good standing" at the date of the accident, although the fee was subsequently paid; but there was no forfeiture of the corporate charter. In the absence of a statute to the contrary, want of the required officers does not dissolve the corporate entity. See 13 Am. Jur., pp. 1160, 1161.

Plaintiff contends (1) that if the corporation was in default in the payment of any fees under the laws of Nevada, or (2) that if said corporation was a mere screen behind which defendant Maddison conducted his personal mining business, then the two Basques were his employees the same as Buhler and Kay. As to the first contention, there was no proof offered to the effect that the corporate charter had been suspended or revoked, nor that such is the law of Nevada. On the contrary it would seem that the Supreme Court of Nevada has construed as revenue measures Secs. 1804-1808, N. C. L. 1929, as amended, which require payment of fees for filing lists of officers and which impose penalties for failure to comply with such statutes; and that third parties may not make any issue of failure to comply with such requirements unless clearly injured by reason of such default. *Porter* v. *Tempa Min. & Mill Co.,* 59 Nev. 332, 93 P. 2d 741. Even if the corporate charter had been revoked, as indicated in the Porter case the directors would hold the assets as trustees. Under such circumstance, if the employer of the Basques was not the corporation, it would not be Maddison personally, but the directors as trustees, and even if Maddison were the only

trustee, being the employer as trustee, the two Basques would not be his personal employees.

No proof was offered that there is any statute in Nevada which would produce the employer-employee relationship urged by respondent. Nor was there any evidence proffered to show that the corporation was a mere screen behind which defendant did his personal mining business. All that was shown was that he advanced money for the assessment work on the claims owned by the corporation, and at the time of the accident he was the only active director. Under the rule laid down in *Weber County-Ogden City Relief Committee* v. *Industrial Comm.*, 93 Utah 85, 71 P. 2d 177, a workman may not disregard the actual employer and recover against an agency or person merely because such agency or person furnishes the funds for financing the employment undertaking. There was no competent evidence that the corporation was not organized in good faith, nor that it was the mere agency through which Maddison financed his own mining operations; nor was there any evidence that it was his alter ego. He did not acquire all of the outstanding capital stock, and there was no showing that he controlled the outstanding stock.

The Lone Pine claims were not owned by defendant alone, but jointly by defendant and Grant. The latter had no interest in the American Beauty Mines claims other than the part he had subleased. Even if Maddison had personally owned all of the American Beauty claims, it could hardly be said that the ownership was the same as that of the Lone Pine claims. Certainly, if any injury had occurred to one of the Basques in the course of employment on the American Beauty claims, suit could not have been maintained against Grant, for the reason he was not their employer nor even one of the employers. See *Holt* v. *Industrial Commission*, 96 Utah 484, 87 P. 2d 686. Our workmen's compensation act, 42-1-52 to 42-1-55, U. C. A. 1943, contemplates that proceedings to recover compensation for injuries shall be brought against the employer. This court has pre-

viously held that if the employer is a partnership, proceedings should not be maintained solely against some individual member of the employer firm, but against the partnership. *Palle* v. *Industrial Commission,* 79 Utah 47, 7 P. 2d 284, 81 A. L. R. 1222.

If, as to the employer Grant, there were only two employees on the Lone Pine claims, then as to the co-employer Maddison, there could not be more than two employees. If plaintiff had sued both Maddison and Grant as his employers, no contention could possibly have been made that the two Basques were working in the same employment. In view of the fact that Grant and Maddison were the employers on the Lone Pine claims, and the fact that Grant had no interest in the claims on which the Basques were employed, it would be unreasonable from all of the evidence to find that there were three or more workmen or operatives employed in the same business in which plaintiff was employed at the time of the injury.

There is another reason why the Utah workmen's compensation law does not govern this case. Plaintiff performed no services for defendant in this state, nor was it contemplated that he should be employed by defendant or Grant in Utah. Plaintiff argues that he was hired in Utah to do work in Nevada, and that under 42-1-52, U. C. A. 1943, defendant was required to furnish him with workmen's compensation insurance, and that having failed to do so defendant cannot avail himself of the defenses of assumption of risk or contributory negligence. However, the evidence does not indicate plaintiff was "hired" in Utah. It merely shows negotiations here which were consummated in Nevada. Plaintiff practically concedes this by saying that after he was hired in Nevada, Dr. Maddison approved in Utah such employment, and that such approval produced a contract entered into in the State of Utah. The argument is not supported by the evidence. When plaintiff and Kay went to Nevada they were told they could not get permanent employment until Dr. Maddison came out there, which would

be in about five days. When Maddison failed to arrive within five days, Grant went to Salt Lake City to see Dr. Maddison. Plaintiff and Kay remained at the mine for a few days, and then went to Elko when Grant did not return promptly. At Elko plaintiff and Kay met Grant on the street who said he had seen Dr. Maddison who had authorized him to give plaintiff and Kay permanent employment. The terms of employment were then agreed upon in Nevada, and it was the contract of employment under which plaintiff was working at the time of the accident. Such contract was made in Nevada and not in Utah. According to testimony offered on behalf of plaintiff, Grant claimed at that time to have authority from Maddison to give plaintiff and Kay permanent employment without further approval by Maddison.

We do not intend anything herein stated to approve plaintiff's argument that if his contract of employment was negotiated in Nevada subject to ratification of defendant in Utah, any such ratification or approval by defendant while actually within the state of Utah would constitute a hiring in this state. Nor do we intend to concede his further contention that if plaintiff were actually employed in Utah to do work exclusively outside of the state of Utah that the employer would be required to cover him with workmen's compensation insurance under the Utah statutes. In this regard in the case of *Fay* v. *Industrial Commission*, 100 Utah 542, 114 P. 2d 508, this court held that the term "hired in this state" as used in 42-1-52, R. S. U. 1933, which was amended in 1941, c. 37, refers to the status of employer and employee being maintained in this state. The testimony of plaintiff Buhler clearly indicates that no duties were to be performed in Utah, and no services were to be rendered to defendant and Grant except in the state of Nevada.

Finally, we must determine whether the plaintiff is entitled to the benefits of the Nevada workmen's compensation act. As hereinbefore indicated, without pleading

it, plaintiff introduced in evidence without objection, by reading into the record, the following portion of Sec. 2680, Nevada Comp. Laws 1929, as amended by Chap. 159, Nevada Statutes 1941:

"(b)  If an employer having the right under the provisions of this act to accept the terms, conditions and provisions thereof, shall fail to accept the same, as herein provided, every such employer shall be deemed to have rejected the terms, conditions, and provisions thereof and in such case such employer shall not escape liability for personal injury by accident sustained by an employee of such employer when the injury sustained arises out of and in the usual course of the employment, because:

"(1)  The employee assumed the risks inherent or incidental to, or arising out of, his or her employment; or the risks arising from the failure of the employer to provide and maintain a reasonably safe place to work, or the risks arising from the failure of the employer to furnish reasonably safe tools or appliances, or because the employer exercised reasonable care in selecting reasonably competent employees in the business;

"(2)  That the injury was caused by the negligence of a coemployee;

"(3)  That the employee was guilty of contributory negligence, unless and except it shall appear that such negligence was willful and with intent to cause the injury, or the result of intoxication on the part of the injured party;

"(4)  In actions by an employee against an employer for personal injuries sustained, arising out of and in the course of the employment where the employer has rejected the provisions of this act, it shall be presumed that the injury to the employee was the first result, and growing out of the negligence of the employer, and that such negligence was the proximate cause of the injury; and in such case the burden of proof shall rest upon the employer to rebut the presumption of negligence."

The evidence, however, does not show that plaintiff was entitled to the benefits of that provision, for the reason said section of the statutes does not define "employer." The section defining "employer" was not introduced in evidence, and we are therefore compelled to follow the legal presumption that in the absence of evidence to the contrary, the statute of another state on a particular subject is deemed to be the same as the statute of this state. *Shurtliff* v.

*Oregon S. L. R. Co.*, 66 Utah 161, 241 P. 1058. As heretofore pointed out, a person is not subject to the provisions of our workmen's compensation act unless he has in his employ three or more workmen or operatives. In this case, as previously indicated, the evidence is not such as to justify a finding that either Maddison himself or Maddison and Grant had three or more employees in the same business in which plaintiff and Kay were working at the time plaintiff sustained his injuries.

Owing to the fact that the judgment must be reversed and a new trial must be granted, in order to properly maintain any action plaintiff will have to amend his pleadings to show whether he seeks recovery under the Utah statutes or under the Nevada statutes. If under the latter, he must plead the statutes on which he will rely. We do not wish to be understood as holding that plaintiff would be entitled to recover if he were to plead the Nevada statutes, but if such is his theory of recovery it should be shown in the pleadings.

The judgment is therefore reversed and the cause is remanded to the district court with directions to set aside the verdict and grant a new trial, plaintiff to be allowed to amend his pleadings. Costs to appellant.

WOLFE, C. J., LARSON and MOFFAT, JJ., and CLARENCE E. BAKER, District Judge, concur.

PRATT, J., on leave of absence.