JESSIE L. LAMB, widow of Virgil Lamb, deceased, appellee, v. STANDARD OIL COMPANY, a corporation, appellant.

No. 49732.

(Reported in 96 N.W.2d 730)

912

JUNE 9, 1959.

Steward, Crouch & Kelly, of Des Moines, for appellant.

Harper, Gleysteen & Nelson, of Sioux City, for appellee.

THORNTON, J.—Award has been made under the Workmen's Compensation law to the widow of Virgil Lamb for compensation found to be due by reason of his death. The questions are, whether the fatal injury arose out of and in the course of the employment and whether intoxication was a proximate cause of the injury.

I. Lamb was a salesman for the Standard Oil Company, working out of the division office at Mason City. He lived in Algona with his wife, the claimant, and his six-year-old son. His territory was a fifty-mile area around Algona. Mason City, Fort Dodge and Clarion were not in his territory. His duties consisted of calling on Standard Oil dealers to sell them and to assist them in selling company products and to represent the company in a public relations capacity. It was a part of his duties to attend dealers' and salesmen's meetings and to check with the dealers as to the time of, and their attendance at, meetings. His duties also required him to assist in obtaining prospective lessees for service stations in his territory. He was on the road every day and a great number of nights when required by the work. He drove a company car and was driving it at the time of his fatal accident. His expenses were all paid by the employer, including room and meals when away from home overnight. Lamb met his death when the company car he was driving went off the road and struck a tree on Highway 169 just north of Fort Dodge.

The employer urges for reversal that there is no substantial evidence that the injury arose out of and in the course of the employment in two ways: (a) that in the nature of things the competent testimony on behalf of the claimant cannot be true, and (b) that Lamb had abandoned his employment and the trip was personal at the time of the injury.

The rule contended for by the employer is expressed in Bowermaster v. Universal Producing Co., 221 Iowa 831, 834, 266 N.W. 503, 505, as follows:

"These alleged facts pointed out by appellee cannot be considered apart from the admitted physical facts and verities in the record, and, if the testimony, relied on to establish these alleged facts, is in conflict with incontestable facts and entirely

914

inconsistent with any theory other than that the witnesses were mistaken, such facts cannot be depended upon as warranting a verdict."

See also Scott v. Hansen, 228 Iowa 37, 289 N.W. 710, and McGlade v. City of Waterloo, 178 Iowa 11, 156 N.W. 680, and cases therein cited. This rule is a limitation on the general rule that the evidence is to be considered in the light most favorable to the claimant. Pohler v. T. W. Snow Construction Co., 239 Iowa 1018, 33 N.W.2d 416.

The only theory on which the award can be sustained is that Lamb went to Fort Dodge to greet and explain to dealers who had been incorrectly informed as to the date of a dealers' meeting. The hearsay statements of Lamb about going to a meeting in Fort Dodge will be excluded from our consideration. Lamb's wife and child were on a trip to Texas during this period. The events leading up to the injury start with an incorrect notice of dealers' meetings being given to Lamb's dealers. On Tuesday night, while attending a sales meeting in Clarion, Lamb learned that the dealers' meetings he thought were going to be held Tuesday, February 5, in Mason City, and Wednesday, February 6, in Fort Dodge, were actually to be held on the 6th and 7th of February at the respective places. At that meeting Stan Johnson, Lamb's immediate superior, instructed Lamb to contact all of his dealers either personally or by phone and advise them of the correct dates. During the following day Lamb so contacted most, but not all, of his dealers. He contacted two who had made the trip to Mason City Tuesday the 5th only to find they were a day early for the meeting. He gave them a check for the amount they had spent for their steak dinners on such trip. He made out his daily report, evidently before 6 p.m. that day, and such report showed no indication of an intention to be in Fort Dodge on company business that evening. The report was found in his motel room in Humboldt after his death. About 6 p.m. he received a phone call from John Asmussen, the assistant sales manager for appellant, at his (Lamb's) apartment in Algona. Asmussen testified:

"I impressed upon Mr. Lamb to be sure and see that his dealers were advised of the change. It was a rather embarrass-

ing situation to have these men come all the way from Armstrong to Mason City and find there was no meeting. I didn't want that to happen again. * * * he said that he had contacted most of his dealers. He didn't say that he had contacted all of them."

A 22-year-old girl, employed as a desk clerk in the Warden Hotel in Fort Dodge, testified that Lamb came into the hotel about 7:30 p.m. and asked if there were any Standard Oil men around and she told him no, and he asked if there was a meeting and she told him no. This witness, after an extended cross-examination, was still positive of her identification of Lamb as the man who made the above inquiries. In addition to the above, Stan Johnson testified that Lamb was a good salesman and conscientious fellow in his work, the best, that he frequently worked evenings and that he was the type of fellow that would stop by and catch any dealers in Fort Dodge that he might not have contacted. If the company business took Lamb beyond his territory he had Johnson's permission to go.

To contradict the above the employer offered two neighbor ladies who testified they saw Lamb's car in front of his apartment as late as 8 p.m. that night. On cross-examination each stated they were not positive, or could be mistaken. Two witnesses heard sounds as if someone was preparing a meal in the Lamb apartment around 6 or 6:30 p.m. Mr. Dennert, another neighbor, saw Lamb's car between 6 and 6:30 p.m. In addition the employer urges us to consider Lamb's conversations with his wife, one Blekfeld, and Hudek, to the effect that he was going to be or was in Fort Dodge for a meeting. These and the inquiry at the hotel are said to show an intent to deceive as to his true purpose in being in Fort Dodge and to show he intended to go to Fort Dodge for personal reasons.

We feel compelled to sustain the commissioner and the trial court on this issue. The inquiries made of the hotel clerk were part of the res gestae, a verbal act indicating that he was "in the course of the employment" in looking for dealers he might have missed. Schmidt v. Pittsburgh Plate Glass Co., 243 Iowa 1307, 55 N.W.2d 227. This and the clerk's testimony that the man she talked with was Lamb are direct testimony of his presence and what he was doing. The commissioner could be-

916

lieve either this testimony or that of the neighbor ladies. The testimony that he was in his apartment at 6:30 p.m. is not inconsistent. He could easily drive to Fort Dodge, a matter of 43 miles, by 7:30 p.m. It was not improper to draw the inference from the above that Lamb, when he made out his report, had fully completed his work for the day in his own mind, and that upon receiving the call from Asmussen he made up his mind to, and did, go to Fort Dodge to prevent a reoccurrence of the Mason. City mistake. The fact that Lamb is next found at the Top Hat Tavern for one and a half to two hours is not inconsistent with this inference. Nor are there any other facts in the record that in the nature of things this would not be true. The rule urged by the employer is not applicable. That the evidence is sufficient to sustain the finding, see Schmidt v. Pittsburgh Plate Glass Co. and Pohler v. T. W. Snow Construction Co., both supra.

"In the absence of fraud the findings of fact made by the industrial commissioner * * * shall be conclusive." Section 86.29, Code of Iowa, 1958. Section 86.30 provides: "Any * * * decision of the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * * 3. If the facts found by the commissioner do not support the order or decree. 4. If there is not sufficient competent evidence * * * to warrant * * * the order or decision."

There is no claim of fraud here. This court has consistently held the above provisions make the commissioner's findings of fact conclusive where the evidence is in dispute or reasonable minds may differ on the inferences fairly to be drawn from the facts. Such findings have the same standing as a jury verdict. Hassebroch v. Weaver Construction Co., 246 Iowa 622, 67 N.W.2d 549, and cases cited therein; Schofield v. White, 1959, 250 Iowa 571, 95 N.W. 2d 40; and Hansen v. State, 1958, 249 Iowa 1147, 91 N.W.2d 555.

II. The question of abandonment of the employment in this case depends on the finding as to intoxication. If, after deviating from the employment or a temporary abandonment, the employee returns to the employment, in this case starts the return trip home, and is injured, the injury is com-

pensable. Pohler v. T. W. Snow Construction Co., supra; and Peterson v. Taylor, 1959, Minn., 96 N.W.2d 247. Or if the trip has a dual purpose, both business and personal activities, on the trip home an injury is compensable. Crowe v. DeSoto Consolidated School District, 246 Iowa 402, 68 N.W.2d 63. The injury thus occurred in the course of the employment. However, if the employee by some "unusual and rash act" causes the injury or it results from risks produced by the personal activities, such injury does not "arise out of the employment." Christensen v. Hauff Brothers, 193 Iowa 1084, 188 N.W. 851; Dooley v. Smith's Transfer Co., 26 N. J. Misc. 129, 57 A.2d 554; and Pasquel v. Coverly, 4 N.Y.2d 28, 171 N. Y. S.2d 848, 148 N.E.2d 899. It is evident that in most cases this question is one of fact.

The evidence is as follows: There is no showing of the whereabouts of Lamb from around 7:30 p.m. at the hotel until 10 to 10:30, when Hudek, an acquaintance of Lamb, and Buckwalter came in the Top Hat Tavern and were with him until around midnight or a little after. These men testified Lamb was sober and had only one bottle of beer while they were there. They spent the time visiting, drinking and dancing. Lamb declined an invitation to eat with Hudek, Buckwalter and their friends at the Treloar Inn. As they were leaving they discussed the weather and driving conditions and Lamb said, "If it's too bad I will come on back." The next these men saw of Lamb was in his wrecked car smashed into a tree. A motorist who saw Lamb's southbound car crash into the tree testified to seeing the car go out of control, the icy condition of the road, and fog banks. He was the first person to Lamb's car after the accident and did not smell any intoxicating liquor and did not see any liquor in the car. The coroner drew a blood sample after Lamb's death and the test showed 196 mgm. of alcohol per 100 cc. of blood. A medical expert testified that amount of alcohol would indicate the individual was intoxicated.

The finding of the commissioner on the issue of intoxication is amply supported. There was evidence, on both sides, of the fact of intoxication coupled with the weather and road conditions on proximate cause. The finding of the commissioner eliminates the personal activities as the cause of the injury.

III. That Lamb at the time of the injury was returning to Fort Dodge because of the weather is a proper inference from the evidence. His statements about starting home and returning if the weather was too bad constitute part of the res gestae, were immediately connected wtih the act of departure, and coupled with evidence as to weather and road conditions furnish a proper basis for such inference. Schmidt v. Pittsburgh Plate Glass Co., supra; 20 Am. Jur., Evidence, section 664; 32 C. J. S., Evidence, section 403.

In conclusion we hold that the findings of the commissioner are supported by substantial evidence. The judgment appealed from is therefore affirmed.—Affirmed.

All JUSTICES concur.