BETTY PROKOP, appellee, v. FRANK'S PLASTERING COMPANY et al., appellants.

No. 51583.

(Reported in 133 N.W.2d 878)

MARCH 9, 1965.

REHEARING DENIED MAY 4, 1965.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, for appellants Frank's Plastering Company and Maryland Casualty Company.

Wetz & Cosgrove, of Sioux City, and Haney, Walsh & Wall, of Omaha, Nebraska, for appellants Hoffman Trucking Service and Home Indemnity Company.

Clem & Adams, of Sioux City, for appellee.

THORNTON, J.—This is a workmen's compensation case. The claimant is the widow of a truck driver killed in a truck collision while in the course of his employment. At the time of his death he was a driver of a truck tractor owned by defendant Frank's Plastering Company and leased to defendant Hoffman Trucking Service, he was pulling a trailer registered in the name of Robert C. Frank, d/b/a Hoffman Trucking Company.

Claimant's right to compensation is not in dispute. This was stipulated. The only question was and is whether Frank's Plastering Company, Hoffman Trucking Service, or both are liable for compensation as decedent's employer. The actual contest is between the insurers. The deputy found as a fact Frank's Plastering Company was the employer, on review the commissioner found as a fact both were employers, and the district court affirmed the commissioner. All defendants appeal.

Hoffman contends the facts found by the commissioner do not support the order and there is not sufficient competent evidence to warrant making the order. Its contention is there is no evidence to support a finding it was an employer singly or jointly with Frank's, that Frank's as lessor of the tractor was the sole employer.

Frank's contention is to a like effect, that there is no evidence to support a finding it is the employer, that it was only a creditor of Hoffman.

At the outset there is sufficient competent evidence to support the award on the theory Frank's and Hoffman so conducted

their business with decedent as to warrant him to believe they were operating the trucking business as partners. The testimony of both Robert Frank and Clarence Hoffman concerning his employment, the directions given by each of them and the manner of handling paychecks were sufficient to support a finding of an implied contract of hire as such partners. This will more fully appear as the testimony is reviewed bearing on the contentions of Frank's and Hoffman.

It does not follow as between the appellants there is sufficient evidence to sustain a decision both were employers.

In pertinent part section 86.29, Code of Iowa, 1958, provides, "In the absence of fraud the findings of fact made by the industrial commissioner * * * shall be conclusive." Section 86.30, Code of Iowa, 1958, as far as applicable, provides a decision of the commissioner may be set aside if the facts found by him do not support it or if there is not sufficient competent evidence in the record to warrant the decision (subsections 3 and 4). Fraud is not claimed.

We have consistently held these provisions make the commissioner's findings of fact conclusive where the evidence is in dispute or reasonable minds may differ on the inferences fairly to be drawn from the facts. Such findings have the same standing as a jury verdict. The real test is the sufficiency of the evidence to support the commissioner's decision. The commissioner, not the court, weighs the evidence. Olson v. Goodyear Service Stores, 255 Iowa 1112, 1115, 125 N.W.2d 251; Kellogg v. Shute and Lewis Coal Co., 256 Iowa 1257, 1261, 130 N.W.2d 667, 669; and citations in each.

As in the case of jury verdicts, where the testimony relied on to establish alleged facts is in conflict with incontestable facts and entirely inconsistent with any theory other than the witness was mistaken, such facts cannot be depended upon as warranting a verdict or as sustaining an award. Lamb v. Standard Oil Co., 250 Iowa 911, 913, 914, 96 N.W.2d 730; Bowermaster v. Universal Producing Co., 221 Iowa 831, 834, 266 N.W. 503, 505; Scott v. Hansen, 228 Iowa 37, 289 N.W. 710; and McGlade v. City of Waterloo, 178 Iowa 11, 156 N.W. 680.

Questions of law are subject to review on appeal. Kel-

logg v. Shute and Lewis Coal Co., 256 Iowa 1257, 1261, 130 N.W. 2d 667, 669; and Barton v. Nevada Poultry Co., 253 Iowa 285, 288, 110 N.W.2d 660, 662.

The evidence as to the owners of Hoffman Trucking Service shows a workmen's compensation insurance policy showing the name of insured as Raymond and Clarence Hoffman, d/b/a Hoffman Trucking, for a policy period from April 4, 1961, to April 4, 1962. The business was hauling livestock. Clarence Hoffman testified he started the business in 1951 and continued it until 1958, the business was then continued by his brother, Raymond, and that he had no interest in Hoffman in 1961. He started to work for Hoffman in 1960. His capacity was to get business— contact people; that he was paid cash by his brother to March 15, 1961, for his work and by checks drawn on the Morningside Savings Bank signed by Robert Frank thereafter.

Frank's Plastering Company is a corporation, Robert Frank is president, his wife, Doris, secretary-treasurer, his brother, Vernon, vice-president. These three were the stockholders. It is in the general plastering business.

March 10, 1961, Frank's and Raymond Hoffman, d/b/a Hoffman Trucking Service, entered into an agreement, Exhibit 1, to secure some $9800 owed by Hoffman to Frank's. Clarence Hoffman testified he got the loan, and as Raymond owned the equipment, he signed the papers. Robert Frank signed Exhibit 1 for Frank's. This agreement provides Hoffman would assign all the income from the business to Frank's. Frank's was to pay all drivers employed by Hoffman and all other costs except a bookkeeper or stenographic help. Frank's was also to pay Hoffman $50 per week for the life of the agreement, apparently Raymond, but actually it appears Clarence was so paid. The net income was to be applied 75 percent to the reduction of the indebtedness and 25 percent to Frank's in consideration of the agreement. A list of the equipment owned by Hoffman was attached to the agreement, ten trailers, one pickup truck and one truck tractor. Chattel mortgages were given Frank's on these and titles thereto delivered. If any of this equipment was sold it was to be applied in reduction of the indebtedness. Upon termination Frank's was to own 25 percent of the physical assets

including the unsold listed equipment. Hoffman had a right to repurchase.

When this agreement was entered into Robert Frank knew Hoffman leased tractors from owner-operators and others. After this agreement, Robert Frank set up a checking account in the Morningside Savings Bank in the name of Hoffman Trucking Service, all receipts of that hauling business went into that account. Robert Frank was the only one who could sign checks on that account.

The contention of Frank's is that it was only a creditor of Hoffman and all that it did in the way of handling the business of Hoffman was in this capacity and under no consideration could it be held as an owner of the business or in partnership with Hoffman. If this was the extent of Frank's activity doubtless such contention would be upheld. Conrad v. Midwest Coal Co., 231 Iowa 53, 59, 60, 300 N.W. 721, 3 N.W.2d 511; and Buhler v. Maddison, 105 Utah 39, 140 P.2d 933, 937.

After Exhibit 1 was entered into, Frank's purchased some truck tractors and leased them to Hoffman. This leasing of tractors to Hoffman was a separate business venture of Frank's and not part of the arrangement under Exhibit 1. Robert Frank testified they made $4000 leasing tractors to Hoffman. After the leasing was started a special truck checking account was set up in Frank's name in The Toy National Bank, all the rentals for tractors due from Hoffman were deposited in this account. This leasing of tractors was by oral agreement between Robert Frank and Clarence Hoffman. Robert Frank testified:

"We operated almost two months without a written lease in regard to Unit 6 [unit in which decedent lost his life]. Just an oral agreement with Clarence Hoffman. The only reason we had this lease [Exhibit 2] was we had to have them in Texas, and you have—required to carry that lease in the truck and the copy on file. * * * It was not my understanding with Clarence Hoffman that I would arrange for the drivers out of our 75% of the payload under the written leases. The agreement was that he hired the drivers and I would pay them. This was because I didn't know anything about drivers and since he was experienced at it he would do the best job. So I said, 'You hire them', and he

agreed to that. We agreed to pay the drivers out of our percentage * * *."

Exhibit 2, the lease, was executed September 18, 1961, but dated back as of March 15, 1961; from its terms it could properly be inferred the lessee was to personally drive the tractor. This was not the intent of the parties from Robert Frank's testimony. It did not provide the lessor was to furnish a driver or make any provision for workmen's compensation insurance. At the foot of the agreement under rates or charges appears, "25% to Hoffman Trucking Co. (trailer rental) 75% to leased tractor owner (per payload basis)." The drivers received 25 percent of the total payload, 13 percent to the first driver, 12 percent to the relief driver.

About 15 tractors were leased by Frank's to Hoffman. The tractor in which decedent lost his life was purchased by Frank's July 17, 1961. The evidence shows the money received for hauling livestock using Frank's tractors was all deposited in the Hoffman account in the Morningside Bank, of this amount 75 percent would be transferred by check to the Frank's Plastering Company trucking account in The Toy National Bank. Frank's, from its general bank account, would pay the drivers including decedent, and both Paul and Clarence Hoffman when either of them drove one of Frank's tractors. Withholding tax and social security taxes were deducted by Frank's and remitted to the government together with the employer's share of the social security tax. Each month the amount of the drivers' earnings would be transferred from Frank's trucking account in The Toy National Bank to Frank's general account. In short, Frank's paid the drivers from its 75 percent of the payload and was not reimbursed.

On August 4, 1961, Frank's procured a workmen's compensation insurance policy. The application, Exhibit 20, shows it included Frank's plastering employees including drivers, lathing employees including drivers, masonry and clerical help, and truckmen not otherwise classified—all employees including drivers. The estimated total annual remuneration for the truckmen was shown as $25,000, the estimated annual premium for them $452.50. In response to this question, "Then Mr. Frank, to your

knowledge, your workmen's compensation rate does include the wages paid to the drivers driving the leased trucks?", Robert Frank said, "Honestly, I don't know. It should be."

Clarence Hoffman testified positively he did not hire decedent. He also testified, "I talked to Mr. Prokop at the time he was employed. * * * I wasn't in charge of hiring employees for the trucking service; Bob Frank was in charge of the hiring. * * * Prokop was really hired through another driver. We had a truck going out, and we needed a driver and he said he knew of someone. That's all I heard. And I left, * * * and when I came back Prokop was there and ready to leave."

Robert Frank also testified he did not hire decedent. He did volunteer the following, "I remember pretty closely when he went to work, and at that particular time, why, Mr. McGee was the first man on this particular truck, we were short a man, and we told him to get a driver and he said he knew of somebody. And that's ——." Frank further testified he always reserved the right to reject a driver.

The driver, Mr. Vern McGee, testified he was hired by Mr. Frank, and, "I am familiar with the circumstances surrounding the employment of Bob Prokop. During September 1961 I had the occasion to need a relief driver on a long haul. Mr. Frank knew of the situation. I had a load going to Texas * * * so Mr. Frank asked me if I knew of anyone that I could get. I told him that I knew Bob Prokop. He said, 'Get ahold of him. Get him down here right away.' Then I went out and got Mr. Prokop and brought him back. He was then my relief driver for about three months."

McGee testified concerning both Hoffman and Frank contacting him and he contacting each of them relative to the hauling business.

The record further shows an application for employment was made by decedent, this was on a form that did not show the employer's name; a physical examination pursuant to Interstate Commerce Commission regulations that did not show the name of his employer, and driver's daily log that showed "Hoffman Trucking" as the carrier but did not show the employer. None of these is helpful in determining the employer. They would

have been the same whether decedent was employed by Frank's, Hoffman or both. Coleman v. Ringle Truck Lines, Inc., 249 Iowa 1133, 91 N.W.2d 566.

Frank's record of employment and earnings for decedent shows he worked from the third week in September to November 21, 1961, the date of his fatal injury, total earnings of $822.16, and his deductions. He had an implied contract of hire from this alone, and undoubtedly an express one through the other driver, Mr. McGee. Such may be quite informal. Sheahan v. Plagge, 255 Iowa 182, 187, 121 N.W.2d 120. A contract, express or implied, is the basis for the employee's right to compensation. Sections 85.17 and 85.61(2), Code of Iowa, 1958; Usgaard v. Silver Crest Golf Club, 256 Iowa 453, 127 N.W.2d 636; and Sister Mary Benedict v. St. Mary's Corporation, 255 Iowa 847, 851, 124 N.W.2d 548.

The evidence further shows Frank's kept the books of Hoffman. All loading information, including the driving records, was kept by Mrs. Hoffman at the Hoffman office and as needed transmitted to Frank's. An accountant employed by Frank's handled the books of account for both Frank's and Hoffman. He prepared the withholding and social security returns for both. From his testimony he considered Clarence Hoffman to be a partner and handled payments to him in that manner. He assisted in the dissolution of the agreement between Hoffman and Frank's in December 1961 and prepared a partnership return of income listing Frank's and Clarence Hoffman as partners. A loss of $3400 was shown for Frank's on the return—no loss was shown to Hoffman. On dissolution the net worth of Hoffman was $10,000 to $11,000, the net worth of the automotive equipment of Frank's $245,000. The accountant testified, "* * * at the beginning of the partnership year Hoffman operated the tractors and used some of Frank's trailers and paid Frank's a rental thereon, which was included in the operating figures for the partnership, but later in the year it transpired that Frank's owned the major rolling stock that was productive at that time and Frank's then absorbed all the costs incident to the operation of this equipment, and Hoffman Trucking Company shared only as a commission

agent for arranging loads." The date of the change does not appear.

We do not find any competent evidence to support a finding that in relation to decedent Frank's acted solely as a creditor. The evidence does not show he was employed by either Frank's or Hoffman as a part of the operation contemplated by Exhibit 1. The money received from the operation of tractors would not normally have gone into the Hoffman business where a tractor was rented for 75 percent of the payload. Decedent was paid from this 75 percent, Hoffman's share was the 25 percent and would be the portion of such income to be handled by Frank's under Exhibit 1.

The contention of Hoffman there is not sufficient evidence to support a finding Hoffman is an employer must be upheld.

The factors for determining an employer-employee relationship are (1) the right of selection, or to employ at will (2) responsibility for the payment of wages by the employer (3) the right to discharge or terminate the relationship (4) the right to control the work, and (5) is the party sought to be held as the employer the responsible authority in charge of the work or for whose benefit the work is performed. Usgaard v. Silver Crest Golf Club, 256 Iowa 453, 455, 456, 127 N.W.2d 636, 637; Bashford v. Slater, 252 Iowa 726, 731, 108 N.W.2d 474; and Hjerleid v. State, 229 Iowa 818, 826, 827, 295 N.W. 139, 143.

Factor (2) above is admittedly Frank's responsibility. Robert Frank said Frank's would pay the wages from the 75 percent of the payload received by Frank's. Frank's records show this was done. From the testimony we cannot find a permissible inference Frank's undertook this as a creditor, a partner or an agent of Hoffman.

As to (1) and (3) the only permissible inference is Frank's, not Hoffman, had these rights. Mr. Frank stated he reserved the final say-so. From his statement of his agreement with Clarence Hoffman the only fair inference is he left whatever hiring Hoffman did to him because he knew more about it, not because he had the right to hire. Hoffman was hiring for Frank's. The evidence bearing on the actual hiring of decedent shows Robert

Frank authorized McGee to hire him. The only fair import to give Robert Frank's denials that he hired decedent is that he himself did not, but his testimony, "we told him to get a driver", indicates he authorized the hiring.

The only evidence Hoffman hired anyone is from Robert Frank and, in view of Frank's own testimony bearing on Hoffman's hiring and the hiring of decedent, amounts to no more than a scintilla and is insufficient to support a finding.

The evidence concerning Frank's and Hoffman's compensation insurance, though in no way conclusive, supports a finding Frank's was the employer but does not support a finding Hoffman was. As pointed out above, Robert Frank thought the policy should cover a driver such as decedent. The evidence bearing on Hoffman's policy is that it was figured on the basis of covering owner-operators.

In (4) and (5) we have Frank's leasing a tractor with a driver; Frank's was the owner of the tractor, it had the duty from the testimony of paying for gas, oil and maintenance costs. It had control insofar as the tractor was concerned, but for the lease to be of value to Hoffman it could direct the routes and hauling. Frank's received a benefit, 75 percent of the payload, that is the intent of a lease, rental income. Of course Hoffman received a benefit, this was the means by which its trailers were moved.

There is evidence to support a finding Frank's is the employer but there is none to support a finding Hoffman is the employer.

Support for the foregoing is found in the following: Eagen v. K & A Truck Lines, Inc., 254 Iowa 914, 119 N.W.2d 805; Coleman v. Ringle Truck Lines, Inc., 249 Iowa 1133, 91 N.W.2d 566; Elliott v. Wilkinson, 248 Iowa 667, 81 N.W.2d 925; Hassebroch v. Weaver Construction Co., 246 Iowa 622, 67 N.W.2d 549; Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501; Hjerleid v. State, 229 Iowa 818, 295 N.W. 139; Knudson v. Jackson, 191 Iowa 947, 183 N.W. 391; and Muscatine City Water Works v. Duge, 232 Iowa 1076, 7 N.W.2d 203.

The case is reversed as to Hoffman Trucking Service and Home Indemnity Company, affirmed as against Frank's Plaster-

ing Company and Maryland Casualty Company and remanded for an appropriate judgment.—Affirmed in part, reversed in part and remanded.

All JUSTICES concur.